James **RODMAN**, Appellee, Cross-Appellant,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a corporation, Appellant, Cross-Appellee.**

No. 55837.

Supreme Court of Iowa.

July 3, 1973.

Richard Langdon of Herrick, Langdon, Belin & Harris, Des Moines, for appellant, cross-appellee.

Thomas L. McCullough, Sac City, for appellee, cross-appellant.

Heard before MOORE, C. J. and RAWLINGS, LeGRAND, UHLENHOPP and McCORMICK, JJ.

McCORMICK, Justice.

This case involves interpretation of an automobile insurance policy. Plaintiff James Rodman was injured as a passenger in his own automobile in an accident on November 25, 1967. He insured the automobile with defendant State Farm Mutual Automobile Insurance Company. In a lawsuit the insurer refused to defend, plaintiff obtained judgment for $26,555.47 against the driver, James Louis Bluml, for his injuries sustained in the accident. Plaintiff then, in the present action, sued defendant on the insurance policy, alleging it covered Bluml's liability to him. Trial court held plaintiff was excluded from liability coverage but awarded him $10,000 judgment

based on the policy's uninsured motorist coverage. Both parties appeal. We affirm.

We will first consider plaintiff's appeal and then defendant's appeal.

## PLAINTIFF'S APPEAL

Three questions are presented in plaintiff's appeal: (1) Did trial court err in holding the principle of reasonable expectations would not enable plaintiff to overcome the policy's exclusion of Bluml's liability to him? (2) Does the exclusion of liability violate chapter 321A, The Code? (3) Is the exclusion void because inserted in the policy without approval of the insurance commissioner?

I. *The doctrine of reasonable expectations.* Plaintiff alleged trial court erred in refusing to apply his version of the principle of reasonable expectations to vitiate a policy exclusion of liability coverage to plaintiff.

In its bodily injury liability insuring agreement defendant covenanted "[t]o pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of (A) bodily injury sustained by other persons * * *." The term "insured" is defined to include (1) the named insured, (2) spouse if a resident of the same household, (3) if residents of the same household, relatives of the first-named insured or his spouse, (4) those using the automobile with permission of the named insured or his spouse, and (5) any person or organization legally responsible for the use of the automobile by an insured.

In its exclusion section the policy provided: "This insurance does not apply under: * * * (i) coverage (A), to bodily injury to the insured or any member of the family of the insured residing in the same household as the insured."

The parties agree Bluml's liability for bodily injury sustained by "other persons" is covered by the policy. He was within the definition of "insured" as a permissive user of the automobile. Plaintiff does not deny the exclusion unambiguously deprives plaintiff of coverage for his own bodily injury.

However, plaintiff introduced evidence that he insured the vehicle with defendant only because he continued the insurance his wife had on it when she owned it prior to their marriage. He was added to the policy, renewed it, and later increased the liability limits and added uninsured motorist coverage. Plaintiff testified he had not read the policy but had expected it to cover liability to him and would not have kept it if he had known it did not. An insurance agent testified for plaintiff that to the best of his knowledge defendant is the only automobile insurer in Iowa whose policies exclude the insured from bodily injury liability recovery. Policies from four other companies were introduced to illustrate absence of the exclusion in other policies.

From this evidence plaintiff argues he had an objectively reasonable expectation his injuries would be covered and trial court erred in holding the principle could not override the policy exclusion in the facts of this case.

The principle advocated by plaintiff is explained in Allen v. Metropolitan Life Ins. Co., 44 N.J. 294, 305, 208 A.2d 638, 644 (1965):

"While insurance policies and binders are contractual in nature, they are not ordinary contracts but are 'contracts of adhesion' between parties not equally situated. * * * The company is expert in its field and its varied and complex instruments are prepared by it unilaterally whereas the assured or prospective assured is a layman unversed in insurance provisions and practices. He justifiably places heavy reliance on the knowledge and good faith of the company and its representatives and they, in turn, are under correspondingly heavy responsibility to him. His reasonable expectations in

the transaction may not justly be frustrated and courts have properly molded their governing interpretative principles with that uppermost in mind. Thus we have consistently construed policy terms strictly against the insurer and where several interpretations were permissible, we have chosen the one most favorable to the assured."

In Gray v. Zurich Insurance Company, 65 Cal.2d 263, 54 Cal.Rptr. 104, 107–108, 419 P.2d 168, 171–172 (1966) the court observed:

"Although courts have long followed the basic precept that they would look to the words of the contract to find the meaning which the parties expected from them, they have also applied the doctrine of the adhesion contract to insurance policies, holding that in view of the disparate bargaining status of the parties we must ascertain that meaning of the contract which the insured would reasonably expect."

The principle is also expressed in Keeton, Insurance Law—Basic Text, § 6.3(a) at 351 (1971): "The objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." Professor Keeton maintains this principle underlies the more specific principles of insurance contract interpretation. He says it is an outgrowth of recognition that in obtaining insurance one is left little choice beyond electing among standardized provisions offered to him and that judicial regulation through application of the principle of reasonable expectations is essential. *Id.* at 350.

He points out the principle "incorporates the proposition that policy language will be construed as laymen would understand it and not according to the interpretation of sophisticated underwriters." *Id.* at 351. In this respect we have long applied the principle. See e. g., Qualls v. Farm Bu-reau Mutual Insurance Company, 184 N. W.2d 710, 712 (Iowa 1971) ("a contract of insurance should be interpreted from the standpoint of an ordinary man's viewpoint, not a specialist or expert"); Central Bearings Co. v. Wolverine Insurance Company, 179 N.W.2d 443, 445 (Iowa 1970) ("the court should ascertain what an insured as a reasonable person would understand the policy to mean, not what the insurer actually intended"); Goodsell v. State Auto & Cas. Underwriters, 261 Iowa 135, 140, 153 N.W.2d 458, 461 (1967) ("a contract of insurance should not be construed through the magnifying eye of the technical lawyer but rather from the standpoint of what an ordinary man would believe it to mean"); Umbarger v. State F. Mut. Auto. Ins. Co., 218 Iowa 203, 208, 254 N. W. 87, 89 (1934) ("How would the assured, as a reasonable person, naturally and ordinarily understand and interpret this language?").

■ Keeton acknowledges most courts apply the doctrine of reasonable expectations as an interpretive tool where the language of a policy is deemed ambiguous. However, as the cases cited *supra* demonstrate, we have employed the concept in its broader meaning as an independent and fundamental approach to insurance policy interpretation, although we have not identified it by the same label. It is clear the principle of reasonable expectations undergirds the congeries of rules applicable to construction of insurance contracts in Iowa.

■ The real question here is whether the principle of reasonable expectations should be extended to cases where an ordinary layman would not misunderstand his coverage from a reading of the policy and where there are no circumstances attributable to the insurer which foster coverage expectations. Plaintiff does not contend he misunderstood the policy. He did not read it. He now asserts in retrospect that if he had read it he would not have understood it. He does not say he was misled

by conduct or representations of the insurer. He simply asked trial court to rewrite the policy to cover his loss because if he had purchased his automobile insurance from another company the loss would have been covered, he did not know it was not covered, and if he had known it was not covered he would have purchased a different policy. Trial court declined to do so. We believe trial court correctly refused in these circumstances to extend the principle of reasonable expectations to impose liability.

What we said in Central Bearings Co. v. Wolverine Insurance Company, *supra,* 179 N.W.2d at 448, is applicable here:

"Whether this problem is approached from the standpoint of manifestation of mutual assent by contracting parties (meeting of the minds) or purchase of a pre-prepared contract; i.e., a commodity (which seems more realistic), the result is the same. Modern tort and warranty litigation and the complexity of modern business require complex offerings of insurance protection. It is not unreasonable to give the effect intended by the draftsman if it is reasonably clear a purchaser would understand the coverage offered.

"No such document is immune from attack by use of various canons of interpretation. The fact that the industry has continued to attempt to clarify the language (as plaintiff points out in its appendix material) should not obscure the original intent of the offer and acceptance; i.e., of the protection actually being bought and sold."

See Stover v. State Farm Mutual Ins. Co., 189 N.W.2d 588, 591 (Iowa 1971).

In the present case we do not believe an ordinary insured would reasonably believe the policy's bodily injury liability coverage applied to him after reading the exclusion of liability coverage for "bodily injury to the insured * * *." Policies containing this exclusion have uniformly been en-forced in accordance with their terms. For cases in which the challenged exclusion in defendant's policy has been upheld see Wheeler v. State Farm Mut. Auto. Ins. Co., 438 F.2d 730 (10 Cir. 1971); State Farm Mut. Auto. Ins. Co. v. Borg, 396 F. 2d 740 (8 Cir. 1968); Newark Ins. Co. v. State Farm Mut. Auto. Ins. Co., 164 Colo. 498, 436 P.2d 353 (1968); Kelsay v. State Farm Mut. Auto. Ins. Co., 242 Md. 528, 219 A.2d 830 (1966). See also 7 Appleman, Insurance Law and Practice, § 4409 at 377 ("where such an exclusion is contained in the policy, it is enforced according to its terms"); 12 Couch on Insurance 2d, § 45:485 at 474 ("A policy provision excluding liability for the named insured for his injury or death is usually held valid and effective to protect the insurer from liability.").

Cases relied on by plaintiff are readily distinguishable. In Gray v. Zurich Insurance Company, *supra,* the issue was an insurer's duty to defend an assault claim. The court held the policy contained a broad promise to defend any bodily injury claim which was not conspicuously or clearly conditioned on nonintentional bodily injury. Coverage would not apply to intentional bodily injury. The reasonable expectation of plaintiff that the insurer would defend him arose from language of the policy. In *Gray* the principle of reasonable expectations was used as an aid in interpreting a policy, not as a means of avoiding its clear meaning. *Gray* was followed in National Indemnity Company v. Flesher, 469 P.2d 360 (Alaska 1970) on analogous facts. See also Loftin v. United States Fire Ins. Co., 106 Ga.App. 287, 127 S. E.2d 53 (1962) where the principle was applied to impose a duty to defend on an insurer where the suit alleged a claim excluded from coverage but the actual facts were within coverage.

Plaintiff also relies on several New Jersey cases. They include Gerhardt v. Continental Ins. Co., 48 N.J. 291, 225 A.2d 328 (1966) in which earlier New Jersey cases are discussed. In each of these cases the

reasonable expectation of the insured was based on the New Jersey court's view of an ordinary layman's understanding of his coverage either from a reading of the policy or from insurance company representations. Later New Jersey cases adhere to the same view of the doctrine. See Englishtown Auction Sales, Inc. v. Mount Vernon Fire Ins. Co., 112 N.J.Super. 332, 271 A.2d 292 (1970), and citations. Other jurisdictions take the same view. See Tudor v. American Emp. Ins. Co., 121 Ga.App. 240, 173 S.E.2d 403 (1970); Rolfsmeier v. Implement Dealers Mut. Ins. Co., 182 Neb. 150, 153 N.W.2d 367 (1967); Golebiewski v. Great Eastern Ins. Co., 55 Misc.2d 998, 287 N.Y.S.2d 525 (1967).

The cases recognizing the principle of reasonable expectations have found such expectations objectively reasonable only if based on an ordinary layman's understanding of what the policy says or from insurance company conduct when it was issued. There is no essential inconsistency between the principle as thus expressed and the principle quoted *supra* from Central Bearings, Inc. v. Wolverine Ins. Co. We refuse to extend application of the principle of reasonable expectations to cases where an ordinary layman would not misunderstand his coverage from a reading of the policy unless there are other circumstances attributable to the insurer which cause such expectations.

We believe trial court was correct in holding the principle of reasonable expectations could not be applied to void the policy exclusion in the circumstances of this case.

■ II. *The financial responsibility law.* Plaintiff also contends the exclusionary clause is void because contrary to the public policy manifest in chapter 321A, The Code, the motor vehicle financial responsibility statute. This contention is answered by Western Cas. & Sur. Co. v. General Cas. Co. of Wis., 200 N.W.2d 892 (Iowa 1972) in which a majority of this court held the provisions of the financial responsibility law do not void provisions of a voluntary insurance contract not issued to comply with that law. The policy in this case was not so issued. We do not reach the question whether the exclusion here would be barred from a policy issued to establish financial responsibility.

■ III. *Approval by the insurance commissioner.* Plaintiff further alleges the exclusion is void because not approved by the insurance commissioner. The evidence shows the entire policy was submitted to the insurance commissioner and approved by him as required by § 515.109, The Code. We have no occasion to reach the issue as to the effect lack of his approval would have on the validity of the exclusion. Nor do we intimate that we believe acquiescence of the insurance commissioner to policy language selected by an insurer gives such language any significance to which it is not otherwise entitled.

Plaintiff has demonstrated no reversible error. The case is affirmed on plaintiff's appeal.

### DEFENDANT'S APPEAL

One question is presented by defendant's appeal. Did trial court err in holding chapter 516A, The Code, nullifies the policy exclusion of uninsured motorist coverage for plaintiff?

IV. *Uninsured motorist coverage.* Defendant contends trial court erred in awarding plaintiff judgment under the uninsured motorist provisions of the policy. Having defeated its insured's liability claim by establishing Bluml's liability to plaintiff was uninsured, defendant now seeks to deny its insured any recovery whatever by arguing the vehicle was not uninsured. This argument depends on the validity of a policy exclusion of uninsured motorist coverage as to plaintiff's own automobile.

Under what is labeled "Uninsured Automobile Coverage" defendant promised "[t]o pay all sums which the insured or his

legal representative shall be legally entitled to recover damages from the owner or operator of an uninsured automobile because of bodily injury sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile * * *." In its definitions section the policy defines uninsured automobile as "(1) a land motor vehicle with respect to the ownership, maintenance or use of which there is no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such vehicles; or (2) a hit-and-run automobile as defined; but the term 'uninsured automobile' shall not include: (i) an automobile defined herein as an 'insured automobile'; (ii) a land motor vehicle owned by the named insured or by any resident of the same household; * * *."

Thus, even though Bluml's liability to plaintiff was not ,insured, the policy purports to deny plaintiff the benefit of uninsured motorist coverage because the vehicle itself was insured within the policy definitions.

Uninsured motorist coverage has been mandatory in Iowa since the 1967 enactment of chapter 516A, The Code. In relevant part § 516A.1 provides:

"No automobile liability or motor vehicle liability insurance policy insuring against liability for bodily injury or death arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, unless coverage is provided in such policy or supplemental thereto, for the protection of persons insured under such policy who are legally entitled to recover damages from the owner or operator of an uninsured motor vehicle or a hit-and-run motor vehicle because of bodily injury * * * caused by accident and arising out of the ownership,

maintenance, or use of such uninsured motor vehicle * * *."

The statute does not define "uninsured motor vehicle" except to state in § 516A.3 that it includes "an insured motor vehicle with respect to which insolvency proceedings have been instituted against the liability insurer thereof * * *." In the absence of a statutory definition of the term defendant asks us to accept the definition in its policy. We decline to do so.

Our goal is to ascertain legislative intent in enactment of chapter 516A. In discovering such intent we consider the language used in the statute, the object sought to be accomplished, the wrong to be remedied, and we are obliged to interpret the statute reasonably to effect its purpose. Crow v. Shaeffer, 199 N.W.2d 45, 47 (Iowa 1972), and citations.

The statute is written to protect the insurance consumer, not the policy vendor. It refers to the concrete situation where the insured is "legally entitled to recover damages" but the liability of the person legally responsible is not insured. There is no reason to believe the legislature intended to deny the purchaser of uninsured motorist coverage the protection he purchased just because the liability coverage is abstractly applicable to someone else.

It is plain the legislature intended to assure protection to an insured against motorists whose liability to the insured is not covered. Under the uninsured motorist statute we believe an automobile or motor vehicle liability policy must protect the insured in any case to the same extent as if the tortfeasor had carried liability insurance covering his liability to the insured in the amounts required to establish financial responsibility. See Bowsher v. State Farm Fire and Casualty Company, 244 Or. 549, 419 P.2d 606 (1966).

In *Bowsher,* the court reached the same conclusion in an identical situation. We also adopt, as did the trial court in this

case, the reasoning of the Illinois court which followed *Bowsher* in Barnes v. Powell, 49 Ill.2d 449, 454, 275 N.E.2d 377, 379–380 (1971):

"We find that the intent of the legislature was that the uninsured motorist coverage would protect an insured generally against injuries caused by motorists who are uninsured, and by hit-and-run motorists, and that this would complement the liability coverage. The distinction that the uninsured motorist was the driver of the automobile in which plaintiff was a passenger, rather than the driver of another automobile, is not decisive. As to this particular plaintiff, because she was excluded from the liability coverage of the policy, the automobile was not an insured automobile and the driver was not an insured motorist, notwithstanding that as to all others the automobile and the driver may have been insured. Because no liability insurance was applicable to the plaintiff at the time of the accident, her uninsured motorist coverage necessarily became effective in light of the legislative mandate."

See also Madison County Mutual Automobile Ins. Co. v. Goodpasture, 49 Ill.2d 555, 276 N.E.2d 289 (1971). Other cases invalidating the same policy exclusion include Markham v. State Farm Mutual Automobile Insurance Co., 326 F.Supp. 39 (N.D.Okl.1971) and Hanover Insurance Company v. Bramlitt, 228 So.2d 288 (Fla. App.1969).

Defendant relies on cases which reached a contrary result in Alabama, Tennessee, Georgia and California. The Alabama and Tennessee cases, Lammers v. State Farm Mutual Automobile Insurance Company, 48 Ala.App. 36, 261 So.2d 757 (1972) and Holt v. State Farm Mutual Automobile Ins. Co., 486 S.W.2d 734 (Tenn.1972) are predicated on a tenuous distinction, urged by the same defendant in this case, that the intent of the statute is to require liability insurers to provide their insureds protection only against other vehicles without liability coverage. We do not believe our legislature intended such a distinction. It is not enough that the vehicle be insured as to some claimants. It is uninsured as to a given claimant as much when its liability coverage is excluded as when such coverage does not exist at all.

The Georgia and California cases, Barras v. State Farm Mutual Automobile Ins. Co., 118 Ga.App. 348, 163 S.E.2d 759 (1968) and Lofberg v. Aetna Casualty and Surety Company, 264 Cal.App.2d 306, 70 Cal.Rptr. 269 (1968) were both decided under statutes which expressly omitted automobiles owned by the named insured from the term "uninsured motor vehicle."

We agree with trial court that the insurer could not by its policy definition in this case deprive plaintiff of uninsured motorist protection required by chapter 321A, The Code. The case is affirmed on defendant's appeal.

Affirmed.