**Janet K. POEHLS, Administrator of the Estate of Timothy A. Poehls, Sr., Deceased, Plaintiff,**

v.

**GUARANTY NATIONAL INSURANCE COMPANY, Defendant.**

No. 88–737.

Supreme Court of Iowa.

Feb. 22, 1989.

Michael J. Warner, Raymond J. Conklin, and Duane Thompson of Braud/Warner, Ltd., Rock Island, Ill., for plaintiff.

Robert V.P. Waterman, Jr. and Maria Mihalakis Waterman of Lane & Waterman, Davenport, for defendant.

Considered by HARRIS, P.J., and LAVORATO, NEUMAN, SNELL, and ANDREASEN, JJ.

NEUMAN, Justice.

The United States District Court for the Southern District of Iowa has certified a question to this court that gives a new twist to the underinsured motorist coverage issues we first faced in *American States Insurance Co. v. Estate of Tollari,* 362 N.W.2d 519 (Iowa 1985) and recently revisited in *McClure v. Northland Insurance Cos.,* 424 N.W.2d 448 (Iowa 1988). As in *Tollari* and *McClure,* the plaintiff challenges an insurer's ability to lawfully limit underinsured motorist coverage by deducting amounts paid through liability and other insurance. Unlike those cases, however, the present case raises the "offset" issue in the context of claims made against the liability and underinsured motorist coverages of *the same policy.* Finding that neither state law nor a reasonable reading of the contract of insurance compels recovery without offset under such circumstances, we so advise the federal court.

This litigation stems from a one-car accident that occured in December 1986. Timothy Poehls was killed in the accident. He was a passenger in a car owned and operated by Kevin Burmeister.

At the time of the accident, Burmeister's vehicle was insured by defendant Guaranty National Insurance Company (Guaranty). Guaranty's policy furnished the following coverage: $20,000 per person/$40,000 per accident for bodily injury liability; $1000 medical payments, and $25,000 underinsured motorist coverage. Poehls carried

no insurance. The parties agree, however, that because Poehls was an occupant of the Burmeister vehicle, he met the "insured person" definition under the Guaranty policy.

Pertinent to this litigation are the policy's terms applicable to underinsured motorist coverage. An endorsement for that purpose provides:

We will pay damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of ... an underinsured motor vehicle.

The underinsured motorist endorsement also includes the following limitation in coverage:

Any amounts payable will be reduced by

....

(2) A payment under the Liability Coverage of this policy; and

(3) A payment under the Medical Payments Coverage of this policy.

Guaranty tendered $25,000 in policy benefits to the administrator of Poehls' estate, plaintiff Janet K. Poehls (Poehls). Guaranty derived this figure as follows: $20,000 policy limit for liability coverage for a single person; the $1000 policy limit for medical payments coverage; plus an additional $4000 to reach the $25,000 policy limit for underinsured motorist coverage.

Poehls rejected this offer, claiming entitlement to $46,000 under the policy. Her figure represents the sum of the liability policy limits ($20,000), plus medical payments ($1000), *and* underinsured motorist coverage ($25,000). The parties agree that Poehls' damages are well in excess of $46,000.

Given this factual background, the federal court has posed the following question:

Is the "Limits of Liability" clause contained in Guaranty's policy valid and enforceable against plaintiff under Iowa law, so that the amount of coverage available to plaintiff under the underinsured provisions of the policy will be reduced by any amounts paid to plaintiff pursuant to the liability and medical coverage provisions?

As noted by the federal court, the dispute centers on whether the answer to the certified question is found in *American States Insurance Co. v. Estate of Tollari*, 362 N.W.2d 519 (Iowa 1985).

In *Tollari*, we adopted what has come to be known as the "broad view" of underinsurance coverage; that is, coverage that provides full recovery, not for just a statutory minimum amount (as in the case of *un*-insured motorist coverage), but for the amount of the insured's loss that the tortfeasor's liability insurance does not reach, subject only to the limit of the insured's underinsurance clause. *Tollari*, 362 N.W.2d at 522; *see also* Comment, *Underinsured Motorist Coverage in Iowa: American States Insurance Co. v. Tollari*, 71 Iowa L.Rev. 1569, 1585–86 (1986). Accordingly, we allowed the Tollari estate to recover full underinsurance benefits under Tollari's own auto policy without reduction for benefits paid pursuant to the tortfeasor's liability policy so long as the combination did not exceed the loss sustained. *Tollari*, 362 N.W.2d at 522. Implicitly applying a consumer-oriented meaning to the term "underinsured," we reasoned that "[a]ny other interpretation of underinsurance would mean the victim cannot recover part of the underinsurance limit he has bought and paid for, and that portion of the limits also would be illusory." *Id.*

We recently reaffirmed the vitality of *Tollari* in *McClure v. Northland Insurance Cos.*, 424 N.W.2d 448 (Iowa 1988). *McClure* involved a plaintiff who was injured in an auto collision while acting in the scope of his employment. We refused to allow an insurance company to deduct from the plaintiff's own underinsurance benefits sums paid pursuant to the tortfeasor's liability policy and the employer's workers' compensation settlement. *Id.* at 450. Referring to the "illusory coverage" problem we perceived in *Tollari*, we reasoned that the purpose of underinsurance is "full compensation of the victim." Hence we perceived there could be no duplication of benefits "until the victim has been fully compensated." *Id.*

The issue of duplication of benefits raised in *McClure* is really at the heart of the controversy before us. Iowa Code § 516A.2 permits an insurer to write exclusions and limitations into an auto policy, even relating to uninsured and underinsured coverage, so long as those conditions "are designed to avoid duplication of insurance or other benefits." *Id.; Kluiter v. State Farm Mut. Auto. Ins. Co.,* 417 N.W. 2d 74, 76 (Iowa 1987); *see also Tri–State Ins. Co. v. De Gooyer,* 379 N.W.2d 16, 18–19 (Iowa 1985).

Poehls claims that under *Tollari* and *McClure,* no duplication of benefits exists until the estate is made whole or until the limits of underinsurance coverage have been exhausted. Guaranty, on the other hand, argues that by claiming entitlement to full recovery under both the liability *and* underinsurance provisions of Burmeister's policy, Poehls is in effect attempting to double the proceeds that would ordinarily be available to compensate for Burmeister's liability. In other words, Guaranty contends that Poehls' interpretation of the policy converts the underinsured coverage into excess third-party liability coverage, a risk neither paid for by Burmeister nor contemplated by the contract of insurance.

The merit of Guaranty's argument turns on the factual distinction that must be drawn between this case and both *Tollari* and *McClure.* In the latter cases, the injured plaintiffs sought to recover underinsurance benefits from their *own* policies, in addition to benefits paid under the tortfeasors' liability policies. To limit or deny the full value of the plaintiffs' underinsurance coverage under such circumstances, we held, would make those purchased benefits illusory. *Tollari,* 362 N.W.2d at 522; *McClure,* 424 N.W.2d at 450.

Here, Poehls claims entitlement as an "insured person" under Burmeister's policy to benefits flowing from Burmeister's negligence as well as benefits stemming from the fact that Burmeister purchased insufficient insurance to cover his potential liability. As to Poehls, however, no purchase of "illusory" coverages can be claimed. Thus her reliance on the premise underlying full recovery in *Tollari* and *McClure* is misplaced.

It is inescapable that Poehls was injured by a tortfeasor (Burmeister) whose liability insurance was insufficient to reach the full damages sustained by Poehls. It also seems clear from *Tollari* and *McClure* that if Poehls had carried his own underinsured motorist coverage he could recover from Burmeister for liability and still recover under his own policy for the difference between his total damages and the liability payment (subject only to the underinsured limits). *Tollari,* 362 N.W.2d at 522. Similarly, if Poehls had been injured by a second car's driver, any proceeds recovered from that other driver's liability policy could not reduce the underinsured coverage available to Poehls as an insured under the Guaranty policy. *McClure,* 424 N.W. 2d at 450. But to allow Poehls to recover for Burmeister's negligence under both the liability and underinsurance provisions of Burmeister's policy would in effect amount to a duplicate payment of liability benefits. It is that duplication that the Guaranty policy clearly and lawfully avoids by providing that any amounts payable pursuant to the underinsurance endorsement will be reduced by payments made pursuant to the liability and medical payments coverage of the policy.

Our conclusion is compelled by what the Washington Supreme Court has described as "common sense and the consuming public's general understanding of coverage under these circumstances." *Millers Casualty Ins. Co. v. Briggs,* 100 Wash.2d 1, 8, 665 P.2d 891, 895 (1983). As that court wisely observed,

> [t]he owner of a vehicle purchases liability insurance to, among other things, protect passengers in the vehicle from his, or another driver's, negligent driving. He purchases underinsured motorist coverage to protect himself and others from damages caused by another vehicle which is underinsured. An insured wishing to avoid personal liability, and protect his passengers, may simply increase the liability insurance. The result of dual recovery in the instant case would transform underinsured motorist coverage into liability insurance. This result

would cause insurance companies to charge substantially more for underinsured motorist coverage in order to match the cost of that coverage with the presently more expensive liability coverage. This increase in cost would discourage consumers from purchasing underinsured coverage, an important protection presently available for a minimum cost.

*Id.*, 665 P.2d at 895. Guaranty notes in its brief that this sentiment has been echoed by every other state court confronting the question before us, and no contrary authority has been uncovered by Poehls. *See Preferred Risk Mut. Ins. Co. v. Tank*, 146 Ariz. 33, 36, 703 P.2d 580, 583–84 (Ariz. App.1985); *Miller v. Duthu*, 470 So.2d 500, 504–05 (La.App.1985); *Myers v. State Farm Mut. Auto. Ins. Co.*, 336 N.W.2d 288, 291 (Minn.1983); *Montanye v. Trans-America Ins. Co.*, 638 S.W.2d 518, 520–21 (Tex.App.1982).

Thus in answer to the certified question posed, we are persuaded that the limits of liability clause contained in Guaranty's policy is valid and enforceable under Iowa Code section 516A.2 because it is designed to avoid duplication of liability coverage purchased under the policy. Accordingly, the underinsured benefits payable under the policy must be reduced by any amounts paid to Poehls pursuant to the liability and medical payments provisions.

CERTIFIED QUESTION ANSWERED.