David **LEUCHTENMACHER**, Administrator of the Estate of Alice Leuchtenmacher, Deceased, Appellee,

v.

**FARM BUREAU MUTUAL INSURANCE COMPANY**, Appellant.

No. 89–741.

Supreme Court of Iowa.

July 18, 1990.

As Amended on Denial of Rehearing Oct. 26, 1990.

James A. Pugh of Morain, Burlingame, Pugh, Juhl & Peyton, West Des Moines, for appellant.

Kevin C. Neylan of Neylan Law Office, Elkader, for appellee.

Considered by LARSON, P.J., and CARTER, LAVORATO, NEUMAN, and ANDREASEN, JJ.

LARSON, Justice.

Alice Leuchtenmacher was killed in an automobile accident with an underinsured driver, and her estate sued her insurance company, Farm Bureau Mutual, to recover under the underinsured motorist benefits of its policy. Prior to trial, the estate settled with the driver of the other car for the amount of his liability limits of $55,000. After trial to a jury, the district court entered a judgment for the plaintiff for the policy limit of her underinsured motorist coverage. Farm Bureau appealed, contending the district court erred by (1) allowing the plaintiff to bring a direct action against it without first obtaining a judgment against the underinsured driver to determine the amount of damages, and (2) admitting into evidence the liability and underinsured policy limits. The plaintiff estate cross-appealed, claiming that the court improperly deducted from its underinsured motorist benefits the amount of Farm Bureau's previous payments under the medical portion of the policy. We affirm on the appeal and reverse on the cross-appeal.

In April 1987, Alice Leuchtenmacher was killed when a drunken driver named Odegard crossed the centerline and struck her car. Odegard had insurance on his car, but Alice's estate representative considered it to be inadequate to cover the damages sustained by the estate. The estate filed suit against both Odegard, for negligence, and Farm Bureau under the policy provisions for underinsured motorist benefits. Farm Bureau responded by claiming that the estate could not bring an action directly against it under its underinsured motorist provisions until there had been a determination, through a suit against Odegard, to determine the amount of damages sustained.

The court disagreed with Farm Bureau on this issue, ruling that the phrase "legally entitled to recover," under the underinsured motorist provisions of Iowa Code section 516A.1 (1987), and the language of Alice's automobile policy, does not mean that the injured party must obtain a judgment against the third party prior to a suit on the policy.

Although the estate settled its case against Odegard prior to trial, its suit against Farm Bureau proceeded to trial and judgment. The jury returned a verdict for the plaintiff for $223,251.57, which it determined to be the total amount the estate was "legally entitled to recover" against Odegard. The court entered judgment against Farm Bureau for $97,263, which represented the policy limits of $100,000 under the provisions for underinsured motorist benefits less Farm Bureau's previous payments under the medical provisions of its policy.

I. *The Suit Against the Third Party.*

■ Farm Bureau contends that, when a dispute arises over the amount its insured is "legally entitled to recover" from an underinsured motorist, that amount must be determined through a judgment against the third party. It argues that, under Iowa Code section 516A.1, and the language of Alice's policy which tracks that language, it is implicit that "legally entitled to recover" means the insured may not pursue a direct action against the insurance company for underinsured motorist benefits until a judgment against the third party has established the amount of damages.

Farm Bureau contends that allowing the insured to bring a direct action is unfair and prejudicial to its rights in three respects: First, a direct action against one's own insurance company places the focus of the action on the insured's own coverage rather than on the civil liability of the third party underinsured motorist. Second, the costs of defending the liability case will necessarily be shifted from the liability carrier (here, Odegard's company), which

contracted to bear that cost, to the insured's own company, which did not. Finally, it argues, a direct action requires the underinsured motorist's insurer to take on the defense of a tort action without the benefit of the "cooperation clause" which is available to the tortfeasor's own liability carrier.

Both parties rely on *Hall v. Allied Mutual Insurance Co.*, 261 Iowa 1258, 158 N.W.2d 107 (1968), to support their respective positions. Farm Bureau contends that *Hall*, while not addressing this exact issue, made it clear that it is the tort recovery which controls the amount of underinsured benefits available to a claimant. The estate counters that *Hall* permitted a recovery against the insurer even though the insured had not brought an action against the tortfeasor.

Our court has apparently never ruled on this precise issue, but courts in other jurisdictions have looked to the intent of the legislature in passing their uninsured and underinsured motorist statutes to determine whether the insured has a right to bring a direct action against the underinsured motorist insurer. *See* Annotation, *Insured's Right To Bring Direct Action Against Insurer For Uninsured Motorist Benefits*, 73 A.L.R.3d 632, 637 (1976).

Our underinsured motorist statute is Iowa Code section 516A.1 (1989), which provides in part:

> No automobile liability or motor vehicle liability insurance policy insuring against liability for bodily injury or death arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered ... unless coverage is provided ... for the protection of persons insured under such policy who are *legally entitled to recover* damages from the owner or operator of an uninsured motor vehicle or a hit-and-run motor vehicle or an underinsured motor vehicle because of bodily injury, sickness, or disease, including death resulting therefrom, caused by accident and ... use of such uninsured or underinsured motor vehicle....

(Emphasis added.)

In ascertaining legislative intent, we consider the language used in the statute, the object sought to be accomplished, and the wrong to be remedied. We are obliged to interpret the statute reasonably to effect its purposes. *Rodman v. State Farm Mut. Auto. Ins. Co.*, 208 N.W.2d 903, 909 (Iowa 1973). In *Rodman*, we said as to the *un*insured motorist provisions of chapter 516A:

> The statute is written to protect the insurance consumer, not the policy vendor. It refers to the concrete situation where the insured is "legally entitled to recover damages" but the liability of the person legally responsible is not insured. There is no reason to believe the legislature intended to deny the purchaser of uninsured motorist coverage the protection he purchased just because the liability coverage is abstractly applicable to someone else.

*Id.*

In *American States Insurance Co. v. Tollari*, 362 N.W.2d 519, 522 (Iowa 1985), we stated that the purpose of underinsured motorist coverage is to provide protection from losses caused by a tortfeasor who is not financially responsible. If the tortfeasor has liability insurance, but the insurance is insufficient to fully compensate for the loss, the insured may recover the balance of the loss from the insured's own carrier. Neither this case, nor any of the others decided under chapter 516A, suggest to us that the amount required to fully compensate the loss must be determined by a second lawsuit.

In the recent case of *In re Estate of Rucker*, 442 N.W.2d 113 (Iowa 1989), the underinsured motorist provision required exhaustion of the underinsured driver's liability limits as a condition precedent to a suit against the company under its underinsured motorist provisions. The issue in *Rucker* was whether a settlement for slightly less than the policy limit was a sufficient compliance with the exhaustion requirement. While this is not the specific issue here, we noted the policy arguments favoring the insured's settlement of the underlying case:

Claimants will often accept such "discounted" settlement amounts in order to avoid the uncertainty, costs and delay that a lawsuit, in lieu of the proposed settlement, would entail. Given the realities of the settlement process, claimants need some latitude to assess the relative advantages and disadvantages of such settlement proposals.

*Id.* at 116 (quoting 2 Widiss, *Uninsured and Underinsured Motorist Insurance* § 44.2, at 125 (2d ed. 1987)).

We see nothing in the language of section 516A.1 or the equivalent language of the policy involved here which suggests that a determination of the damages to which the insured is "legally entitled to recover" must be determined by a separate lawsuit, as opposed to being raised in the direct action under the underinsured motorist provisions of the policy. A contrary rule could cause fruitless lawsuits against indigent and bankrupt motorists and would put the insured through the expense of multiple suits to obtain one recovery.

■ Even the language of Farm Bureau's policy in this case suggests that a suit against a third party, underinsured motorist is not considered to be a condition precedent to the suit under the underinsured motorist provisions. It provides for certain conditions to a lawsuit in this language:

### CONDITIONS

' 2. Suits Against Us

There is no right of action against us:

c. under medical payments underinsured motor vehicle, underinsured motor vehicle, physical damage, death indemnity and disability income coverages, until thirty days after we get insured's notice of accident loss.

■ By providing that, as a condition to suit, at least thirty days pass after the insurance company gets notice of the claim, the implication is that a prior suit against the underinsured motorist is not considered to be such a condition. An insurer assumes the duty to define any limitations or exclusionary clauses in clear and explicit

terms. *Benzer v. Iowa Mut. Tornado Ins. Ass'n,* 216 N.W.2d 385, 388 (Iowa 1974). Also, failure of the insurer to define a particular term in its policy subjects the company to the risk that the court will adopt from those alternative interpretations available to it the one most favorable to the insured. *Edwards v. State Farm Mut. Auto. Ins. Co.,* 296 N.W.2d 804, 807 (Iowa 1980). We will enforce exceptions and conditions in insurance policies only if the language is clear and unambiguous. *Cairns v. Grinnell Mut. Reins. Co.,* 398 N.W.2d 821, 824 (Iowa 1987); *M–Z Enters., Inc. v. Hawkeye–Security Ins. Co.,* 318 N.W.2d 408, 413 (Iowa 1982).

We agree with the district court that a suit against Odegard was not a condition precedent to a claim under the underinsured motorist provisions of the policy.

### II. *Evidence of Policy Limits.*

■ Farm Bureau complains that the plaintiff was permitted to introduce evidence concerning the policy limits available under both the underinsured motorist coverage of its own policy and Odegard's liability policy. Farm Bureau contends that this was improper, because the sole issue in the case was the determination of the liability of Odegard, and the amount of the underinsured limits was not relevant.

Iowa Rule of Evidence 411 states:

Evidence that a person was or was not insured against liability is not admissible upon the issue whether he acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness.

Evidence of the insurance limits in this case was not offered on the issue of whether Odegard "acted negligently or otherwise wrongfully"; it was offered by the estate to prove its claim under the insurance contract. In order to recover, the estate necessarily must prove the existence of the insurance contract and its terms. Any direct claim against an insurer on a contract

dispute necessarily involves introduction of the insurance policy and its terms.

We find no error in this respect.

### III. Deduction for Funeral and Ambulance Expenses.

In its cross-appeal, the plaintiff estate complains that the court erred in deducting from the $100,000 underinsured motorist benefits the amount of $2737, which represented funeral and ambulance expenses. Prior to the filing of this suit, Farm Bureau paid that amount to the estate under coverage Part IIC of the policy which provides:

> We will pay reasonable expenses for necessary medical expenses because of bodily injury sustained by an insured. These expenses must be incurred within three years from date of accident.
>
> . . . .
>
> Any payment [under Coverage C] shall be applied toward the settlement of a claim or payment of a money judgment for bodily injury for any insured under Part I or Part IV [underinsured motorist coverage].

The estate contends that the district court erred in deducting this amount from the judgment because it does not represent a duplication of underinsured benefits. Moreover, it claims that it will not recover its total damages, since the $100,000 limit under the policy does not cover the present value of the lost accumulation to the estate, which the jury determined to be in excess of $200,000. The estate contends that recovery of medical expenses, including those for funeral and ambulance, is separate and distinct from the underinsured motorist coverage of the policy, and a separate premium was paid for each coverage.

The offset provision of Part IIC of the policy means that Farm Bureau's payment of medical (including funeral) benefits under Part C must be offset by any payments for the same losses under insurance provisions of the policy. Offset clauses such as this are designed to avoid duplication of benefits. Iowa Code § 516A.2 (1987) (Such clauses "may include terms, exclusions, limitations, conditions, and offsets which are designed to avoid duplication of insurance or other benefits."). See McClure v. Northland Ins. Cos., 424 N.W.2d 448, 450 (Iowa 1988).

Here there is no showing, or even a claim, that the estate will be paid twice for the same items of loss. Poehls v. Guaranty National Insurance Co., 436 N.W.2d 62 (Iowa 1989), relied on by Farm Bureau, is distinguishable. There we simply answered a certified question from the federal district court as to whether such offset clauses are valid. We held that they were but pointed out their purpose is to avoid duplication of benefits. Id. at 64. We did not hold, as Farm Bureau suggests, that recovery under the underinsurance provisions of the policy must be reduced by medical payments to the insured, even if there is no duplication. That specific question was not raised in Poehls.

We hold that it was error for the court to deduct $2737 from the plaintiff's judgment and therefore reverse on the cross-appeal.

We affirm on the appeal, reverse on the cross-appeal, and remand for entry of a corrected judgment in accordance with this opinion.

AFFIRMED ON APPEAL; REVERSED ON CROSS–APPEAL.