# IN THE COURT OF APPEALS OF IOWA

No. 14-1346
Filed April 22, 2015

**WESTFIELD NATIONAL INSURANCE COMPANY,**
    Plaintiff-Appellee,

**vs.**

**ESTATE OF REBECCA J. FREA, By and
Through Its Administrator, RONALD FREA,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Johnson County, Carl D. Baker, Judge.


The Estate of Rebecca Frea appeals from summary judgment entered in favor of Westfield National Insurance Company, the insurer of the automobile in which Frea was a passenger when she was killed. **AFFIRMED.**


Robert N. Downer of Meardon, Sueppel & Downer, P.L.C., Iowa City, for appellant.

Philip A. Burian of Simmons, Perrine, Moyer, Bergman, P.L.C., Cedar Rapids, for appellee.


Considered by Danilson, C.J., and Potterfield and Bower, JJ.

**POTTERFIELD, J.**

The Estate of Rebecca Frea (Estate) appeals from summary judgment entered in favor of Westfield National Insurance Company (Westfield), contending the district court erred in interpreting the automobile insurance policy at issue. Finding no error in the district court's interpretation, we affirm.

**I. Background Facts and Proceedings.**

The following facts are not disputed. On July 25, 2010, Rebecca Frea was one of four people killed in a single motor vehicle accident while she was riding as a passenger in a Nissan Altima, which she owned and was insured by Westfield National Insurance Company. The vehicle was negligently driven by her boyfriend, Jason Onsgard. Onsgard was a permissive driver of Frea's car and therefore covered by her insurance policy. He had no other insurance coverage for the accident.

On January 18, 2011, Westfield tendered the limits of the liability coverage of Frea's policy through this interpleader action. On June 8, 2012, the district court found the Estate of Rebecca Frea was entitled to a portion of the liability coverage limits. The Estate then sought additional benefits under the underinsured motorist (UIM) policy endorsement in the same Westfield policy.

The Estate and Westfield filed competing motions for summary judgment. On July 22, 2014, the district court found the UIM endorsement did not provide coverage for the Estate's claim and entered summary judgment for Westfield. The Estate appeals.

**II. Scope and Standard of Review.**

The interpretation of an insurance policy is a matter of law. *Greenfield v. Cincinnati Ins. Co.*, 737 N.W.2d 112, 117 (Iowa 2007). Therefore, our review is for errors of law. Iowa R. App. P. 6.907.

**III. Discussion.**

Frea was an insured under the Westfield policy. Onsgard, too, was an insured under the policy's definition of that term ("Other persons using the vehicle . . . with your permission."). The instant dispute revolves around these pertinent parts of the Westfield policy:

> We will pay compensatory damages which an ***insured*** is legally entitled to recover from the owner or operator of an ***underinsured motor vehicle*** because of ***bodily injury*** caused by an accident.
> The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of ***the underinsured motor vehicle***.
> . . . .
> "***Underinsured motor vehicle***" means a land motor vehicle . . . to which a bodily injury liability bond or policy applies at the time of the accident but its limits of bodily injury liability is . . . [n]ot enough to pay the full amount the ***insured*** is legally entitled to recover as damages . . . .
> However, "***underinsured motor vehicle***" does not include any vehicle or equipment: . . .
> B. Owned by or furnished or available for the regular use of you or any ***family member***.
> . . . .
> **EXCLUSIONS**
> A. We do not provide Underinsured Motorists Coverage for ***bodily injury*** sustained by any insured:
> 1. While occupying, or when struck by, any motor vehicle owned by you or any ***family member*** which is not insured for this coverage under this policy.

Westfield argues that because Frea owned and regularly used the Nissan Altima, the Altima is not an "underinsured motor vehicle." The Estate's damages

therefore were not caused by the operator of, and do not arise out of the use of, an underinsured motor vehicle within the meaning of the policy.

For its part, the Estate argues that to allow the vehicle to be excepted from coverage violates Iowa Code section 516A.1 (2009). The district court summarized the Estate's argument:

> The Frea estate asserts that Jason Onsgard did not have insurance coverage other than the bodily injury coverage under Rebecca Frea's Westfield policy. As such, he was underinsured and not financially responsible. Therefore, the Frea estate is entitled to recover under Rebecca Frea's UIM coverage under the Westfield policy to the extent that the estate's damages exceed coverage available under the bodily injury provision of the Westfield policy and the Dram Shop policy.

Section 516A.1 requires all automobile insurance policies, absent a written rejection by the insured, to include coverage for uninsured and underinsured motorist claims. Section 516A.2(1) provides that "forms of coverage may include terms, exclusions, limitations, conditions, and offsets which are designed to avoid duplication of insurance or other benefits." *See generally Greenfield*, 737 N.W.2d at 117 ("When such language is included in policies covering underinsured motorists, it is referred to generically as a reduction-of-benefits provision.").

The Estate relies upon a 1973 decision of the Iowa Supreme Court, *Rodman v. State Farm Mutual Auto Insurance Co.*, 208 N.W.2d 903 (Iowa 1973), for its claim that the insurance policy exclusions violate public policy.[1] However,

---

[1] In *Rodman*, the plaintiff was injured as a passenger in his own automobile in an accident on November 25, 1967. 208 N.W.2d at 904. He insured the automobile with State Farm Mutual Automobile Insurance Company. *Id.* After obtaining judgment against the driver, Rodman sued State Farm, asserting liability and uninsured motorist coverage. State Farm argued it was not liable on the basis of policy exclusions. The

that case concerns uninsured motorist (UM) coverage and an absence of liability coverage. *See Rodman*, 208 N.W.2d at 909-10 (upholding reasoning of the trial court that relied upon an Illinois case wherein the court stated, "Because no liability insurance was applicable to the plaintiff at the time of the accident, her uninsured motorist coverage necessarily became effective in light of the legislative mandate" (citation and internal quotation marks omitted)). The supreme court noted the *Rodman* decision in its later decision of *Lindahl v. Howe*, 345 N.W.2d 548, 550-51 (Iowa 1984), where the court held that section 516A.2 allows exclusions only where duplication of insurance actually occurs.[2]

---

supreme court upheld the liability exclusion provision of the policy, rejecting the plaintiff's claim that his reasonable expectations voided the policy exclusions. *Id.* at 907-08. However, the supreme court then addressed the insurer's cross-appeal:

> Having defeated its insured's liability claim by establishing [the driver's] liability to plaintiff was uninsured, defendant now seeks to deny its insured any recovery whatever by arguing the vehicle was not uninsured. This argument depends on the validity of a policy exclusion of uninsured motorist coverage as to plaintiff's own automobile.

*Id.* at 908. Addressing chapter 516A, the court stated:

> The statute is written to protect the insurance consumer, not the policy vendor. It refers to the concrete situation where the insured is "legally entitled to recover damages" but the liability of the person legally responsible is not insured. There is no reason to believe the legislature intended to deny the purchaser of uninsured motorist coverage the protection he purchased just because the liability coverage is abstractly applicable to someone else.
>
> It is plain the legislature intended to assure protection to an insured against motorists whose liability to the insured is not covered. Under the uninsured motorist statute we believe an automobile or motor vehicle liability policy must protect the insured in any case to the same extent as if the tortfeasor had carried liability insurance covering his liability to the insured in the amounts required to establish financial responsibility.

*Id.* at 909. The case before us is distinguishable because the Estate was entitled to a portion of the liability coverage under the instant policy. The liability coverage limits were paid in full to all of the passengers.

[2] *Lindahl*, 345 N.W.2d at 551, states:

> The broad mandate of coverage under section 516A.1 would mean little if an insurer could defend any exclusion of coverage by asserting it was designed to prevent a possible duplication of insurance or other benefits

However, *Lindahl* was overruled in *Miller v. Westfield Insurance Co.*, 606 N.W.2d 301, 304-05 (Iowa 2000). In *Miller*, the court wrote:

> Using this common meaning of the language chosen by the legislature, there is no reasonable interpretation of the provision in question other than that the General Assembly meant to authorize exclusions that are *intended* to or have the *purpose* of avoiding duplication of benefits. Requiring the *actual* duplication of benefits is simply contrary to the language used by the legislature.
>
> An apparent rationale for our decision in *Lindahl* was our observation that "the broad mandate of coverage under section 516A.1 would mean little if an insurer could [rely on an exclusion] designed to prevent a possible duplication of insurance . . . without regard to whether such duplication actually occurs." 345 N.W.2d at 551 . . . .
>
> In summary, under a proper application of the rules of statutory interpretation, we conclude that actual duplication of benefits is not required by section 516A.2(1). Our imposition of such a requirement in *Lindahl* was clearly wrong. [(citation omitted)].
>
> To make matters worse, we have not required an actual duplication of benefits when an owned-but-not-insured exclusion is contained in underinsured motorists (UIM) coverage. We have said that, in the context of UIM coverage, there is "no duplication of benefits until the victim has been fully compensated." *McClure v. Northland Ins. Co.*, 424 N.W.2d 448, 450 (Iowa 1988) (applying section 516A.2(1)'s duplication-of-benefits provision). Yet in *Kluiter v. State Farm Mutual Automobile Insurance Co.*, 417 N.W.2d 74 (Iowa 1987), we upheld an owned-but-not-insured exclusion with no discussion of whether the insured had been fully compensated for his injuries. 417 N.W.2d at 76. Instead, we merely found "*potential* duplication."

606 N.W.2d at 305-06.

Here, the district court concluded the exclusion provided in the Westfield policy is not void on public policy grounds, citing *Jones v. American Star Insurance Co.*, 501 N.W.2d 536, 537-38 (Iowa 1993), where the court held that an exclusion denying benefits under an underinsured motorist clause of an

---

without regard to whether such duplication occurs. We do not believe the legislature intended such a result.

automobile policy when the liability portion of the same policy has been paid in full, is not void on public policy grounds. The *Jones* court wrote:

> In an action for underinsured motorist coverage against the driver's insurer by the estate of a passenger killed in a one-vehicle accident, we upheld a limitation on coverage to amounts paid under the policy's liability coverage. *Poehls v. Guaranty Nat'l Ins. Co.*, 436 N.W.2d 62, 64 (Iowa 1989). We explained that the plaintiff, an insured person under the driver's policy, sought benefits flowing from the driver's negligence as well as benefits arising because the owner purchased insufficient insurance to cover his potential liability. *Id.* at 64. *To allow plaintiff to recover for negligence under both the liability and underinsurance provisions of the policy would, in effect, amount to a duplicate payment of liability benefits*. *Id.* We held that limitation on coverage to amounts paid on the liability policy is valid and enforceable. *Id.* at 65.

501 N.W.2d at 537-38 (emphasis added). The Estate's attempts to distinguish this case are unavailing. Finding no error in the court's interpretation, we affirm.

**AFFIRMED.**