E. John FERGUSON, Plaintiff,

v.

**ALLIED MUTUAL INSURANCE COMPANY and Aetna Casualty and Surety Company, Defendants.**

**AETNA CASUALTY AND SURETY COMPANY, Cross–Claimant–Appellant,**

v.

**ALLIED MUTUAL INSURANCE COMPANY, Cross–Claim–Defendant–Appellee.**

No. 93–381.

Supreme Court of Iowa.

Feb. 23, 1994.

*nandez v. Farmers Ins. Co.,* 460 N.W.2d 842, 843 (Iowa 1990).

Stephen F. Avery, Cornwall, Avery, Bjornstad & Scott, Spencer, for appellant.

William F. Fanter and Barbara A. Hering, Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellee.

E. John Ferguson, pro se.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, SNELL, and ANDREASEN, JJ.

SNELL, Justice.

## I. Introduction

This declaratory action concerns a controversy between two insurance companies, Allied Mutual Insurance Company (Allied), appellee, and Aetna Casualty and Surety Company (Aetna), appellant, over the coverage limits of a farm liability policy issued by Allied to John Ferguson, the named plaintiff in this matter.

The Dickinson County District Court entered a partial summary judgment in favor of Allied. Aetna appeals from that ruling. It contends the district court erred in holding that the Allied farm liability policy did not extend coverage to Aetna's insured for damage allegedly stemming from Ferguson's negligence. We affirm.

## II. Standard of Review

Normally, when reviewing declaratory judgment actions, our standard of review is dependent on whether the case was brought in equity or at law in the district court. *In re Mt. Pleasant Bank & Trust Co.,* 426 N.W.2d 126, 129 (Iowa 1988). That distinction is inconsequential on this appeal because the matter is before us on review of the district court's entry of summary judgment in favor of Allied. *See KMEG Television, Inc. v. Iowa State Bd. of Regents,* 440 N.W.2d 382, 384 (Iowa 1989). Our only task is to determine, after reviewing the entire record, whether a genuine issue of material fact exists and whether the trial court correctly applied the law. *Id.; see also Her-*

## III. History of Case

The following facts about this case are undisputed. Barnhill Associates, Inc., Salary Saving Plan and Profit Sharing Trust (Barnhill) advanced funds to Jim Hays (Hays) for investment in the hog market. Hays agreed to use the money advanced by Barnhill to purchase forty pound feeder pigs, fatten them, and sell them. Hays was to pay the sale proceeds from the fattened hogs to Barnhill. Barnhill purchased from Aetna a fiduciary responsibility insurance policy to cover its investment with Hays.

Ferguson was to care for the hogs. Ferguson purchased from Allied a farm liability policy. The Allied policy provided:

## II. COVERAGES
### A. COVERAGE L—Farm Liability

If a claim is made or a suit is brought against any "insured" for damages because of "personal injury," "bodily injury" or "property damage" caused by an "occurrence", to which this coverage applies, we will:

1. pay up to "our" limit of insurance for the damages for which the "insured" is legally liable; and

2. provide a defense at "our" expense by counsel of "our" choice. "We" may make any investigation and settle any claim or suit that "we" decide is appropriate. "Our" obligation to defend any claim or suit ends when the amount "we" pay for damages resulting from the "occurrence" equals "our" limit of insurance.

Under section I.A.4 of the policy the term "insured" means:

"you" and:

. . . .

b. if the "named insured" is designated in the Declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such. . . .

Property damage is defined under the policy as "physical injury to or destruction of tangi-

ble property, including loss of use of this property."

Section III.B.5 of the Allied policy expressly excludes from Coverage L " 'property damage' to property rented to, occupied or used by or in the care of the 'insured.' "

The Allied policy also contained the following endorsement:

## INCIDENTAL ACTIVITIES ENDORSEMENT

The insurance afforded under Coverages L and M apply to "Bodily Injury" or "Property Damage" caused by or arising out of the ownership, maintenance, operation or use of equipment in incidental snow removal, garden plowing, lawn mowing, or any incidental operation as shown on Form 811 (Additional Endorsement Information) of this policy.

Form 811 states the following:

## FORM 811 ADDITIONAL INFORMATION

——————— Description ———————

## INCIDENTAL ACTIVITIES

## CUSTOM LIVESTOCK FEEDING OPERATION

When Barnhill requested Hays to sell the hogs purchased with Barnhill's money, Barnhill discovered that there were no hogs to sell. Hays could not account for the loss. Aetna paid Barnhill $140,815.48 for its loss pursuant to the fiduciary responsibility policy.

Aetna, as the subrogor to Barnhill's claims, sued Hays and Ferguson for negligence and fraud in Clay County District Court. The Clay County District Court entered summary judgment in favor of Aetna against Hays on all its claims. It overruled Aetna's summary judgment motion with respect to its claims against Ferguson. Moreover, the Clay County District Court ruled that a joint venture existed between Ferguson and Hays.

On October 7, 1991, Ferguson filed a declaratory judgment action before the Dickinson County District Court against Allied and Aetna. Ferguson sought a judgment declaring that any judgment entered against him in favor of Aetna with regard to Aetna's claims pending in Clay County District Court be paid and satisfied by Allied under the farm liability policy Allied issued to Ferguson. Ferguson also sought a declaration from the court that Allied had a duty to defend him with regard to Aetna's claims.

Aetna filed a cross-claim against Allied in the Dickinson County action. Aetna sought a judgment against Allied declaring that its claims against Ferguson were covered under the farm liability policy Allied issued to Ferguson.

Allied moved for summary judgment on both Ferguson's claims and Aetna's cross-claim. The district court found no genuine issues of material fact existing in the case. The court entered partial summary judgment in favor of Allied and in doing so made five holdings, three of which are contested on appeal.

First, the court held Barnhill's loss involved intangible property. Because the Allied policy definition of "property damage" included only losses to "tangible property," the court ruled the Allied policy excluded coverage for this loss.

Second, the court held the Allied policy did not cover Aetna's claims by virtue of the policy provision excluding coverage for damaged property "in the care of the insured."

Finally, the court dismissed Aetna's cross-claim on the ground that Hays, as a co-joint venturer of Ferguson, was not a named insured under the policy.

Neither party on appeal contends a genuine issue of material fact exists in the case. Thus, our sole purpose will be to review this case for legal error.

## IV. Discussion of Law

The primary issues on appeal call for this court to construe the provisions of the Allied farm liability policy issued to Ferguson. Our rules of contract interpretation and construction peculiar to insurance policies apply. *See Vance v. Pekin Ins. Co.*, 457 N.W.2d 589, 590 (Iowa 1990); *Jensen v. Jefferson County Mut. Ins. Ass'n*, 510 N.W.2d 870 (Iowa 1994).

When construing or interpreting the meaning of insurance policy provisions we strive to ascertain the intent of the parties at the time the policy was sold. *Grinnell Mut. Reinsurance Co. v. Voeltz*, 431 N.W.2d 783, 785 (Iowa 1988); *State Auto. & Casualty Underwriters ex rel. Auto. Underwriters v. Hartford Accident & Indem. Co.*, 166 N.W.2d 761, 763 (Iowa 1969).

"Interpretation" and "construction" are technically distinct exercises with regard to resolving insurance contract problems. *Connie's Constr. Co. v. Fireman's Fund Ins. Co.*, 227 N.W.2d 207, 210 (Iowa 1975). "Interpretation" calls for this court to determine the meaning of contractual words. *Id.* These questions are legal in nature unless the meaning of the language "depends on extrinsic evidence or on a choice among reasonable inferences from extrinsic evidence." *Id.* Construing a contract, on the other hand, calls for this court to determine the legal effect of a contract. *Id.* The proper construction of an insurance contract is always an issue of law for the court to resolve. *Id.*

Insurance contracts are construed in the light most favorable to the insured. *Id.* Exclusion provisions in insurance policies are construed strictly against the insurer. *Bankers Life Co. v. Aetna Casualty & Sur. Co.*, 366 N.W.2d 166, 169 (Iowa 1985). When construing insurance policies "[t]he objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." *Grinnell*, 431 N.W.2d at 786 (quoting *Rodman v. State Farm Mut. Auto. Ins. Co.*, 208 N.W.2d 903, 906 (Iowa 1973)). The principle of reasonable expectations "undergirds the congeries of rules applicable to construction of insurance contracts in Iowa." *Rodman*, 208 N.W.2d at 906.

When construing insurance policies we consider the effect of the policy as a whole, in light of all declarations, riders, or endorsements attached. *Bankers Life*, 366 N.W.2d at 168–69; *Stover v. State Farm Mut. Ins. Co.*, 189 N.W.2d 588, 591 (Iowa 1971); *Hartford Accident*, 166 N.W.2d at 764.

## V. Analysis

Aetna contends the Incidental Activities Endorsement and Form 811, attached to the Allied farm liability policy, expands the coverage afforded under Coverage L. Moreover, according to Aetna, when the Incidental Activities Endorsement is applicable, the Coverage L exclusion in Part III.B.5 is nullified. Aetna argues that Part III.B.5 is nullified because having property in your care is "the essence of a custom livestock feeding operation." Therefore, according to Aetna, the exclusion provision irreconcilably conflicts with the Incidental Activities Endorsement and Form 811. Aetna contends this was the intent of the parties when Allied sold Ferguson the policy. Moreover, Aetna contends it is reasonable for Ferguson to expect the policy, with the Incidental Activities Endorsement attached, would cover the "loss of property of a custom livestock feeding operation . . . ." At best, Aetna argues the policy provided coverage for their claim. At worst, Aetna contends the policy provisions are ambiguous and should be construed against Allied.

Allied, on the other hand, contends the effect of the Incidental Activities Endorsement is to provide an additional, incremental amount of the liability coverage under Coverage L. Allied contends the endorsement did not create a separate insurance agreement. Rather, Allied contends the Incidental Activities Endorsement is subject to the Coverage L exclusions.

The Incidental Activities Endorsement clearly extends the "insurance afforded" under Coverage L. The insurance afforded under Coverage L is set forth in section II.A of the policy. Coverage L provides: "If a claim is made or a suit is brought against any 'insured' for damages because of . . . 'property damage' caused by an 'occurrence', *to which this coverage applies,* we will . . . [pay certain damages to a limit and provide defense at our cost]." The only place in the policy explaining what is not covered under Coverage L is section III.B. That section provides: "Coverage L—Farm Liability does

not apply to: ... 5. 'property damage' to property in the care of the 'insured.'"

The Incidental Activities Endorsement does not explicitly reference the Coverage L exclusions. However, we do not believe—even from the standpoint of a layperson—that this creates an ambiguity in the policy. The individual provisions of a policy must be read in conjunction with the policy as a whole. *Stover*, 189 N.W.2d at 591. Moreover, "[e]ndorsements do not limit or change the basic policy except as specifically set out in the endorsement." *Swift & Co. v. Zurich Ins. Co.*, 511 S.W.2d 826, 832 (Mo.1974). The Incidental Activities Endorsement does not explicitly alter the insurance already afforded by Coverage L.

Nor does the Incidental Activities Endorsement implicitly alter the scope of Coverage L. We reject as meritless Aetna's argument that the Incidental Activities Endorsement and Form 811 are in irreconcilable conflict with Exclusion III.B.5. The only way Aetna's construction of the provision could be found reasonable would be to completely ignore Exclusion III.B.5 of the policy. Moreover, such a construction would require us to read into the policy a broad definition of the term "custom livestock feeding operation." No evidence appears on the record supporting the proposition that the parties intended, at the time the policy was sold, to materially alter Coverage L's scope, nullifying the exclusions to Coverage L merely by listing, without further definition, "custom livestock feeding operation" as an incidental activity to which the Incidental Activities Endorsement applies. Furthermore, Aetna concedes that without the Incidental Activities Endorsement, their claim would not be covered under the policy. To give the language of the Incidental Activities Endorsement the degree of preemptive force advocated by Aetna in this case would be to engage in the type of strained and unreasonable construction of an insurance policy we strive to avoid. *See Hartford Accident*, 166 N.W.2d at 764. We hold as a matter of law the Allied policy does not cover Aetna's subrogation interest in this case. Because of this holding, we do not address the additional

issues raised by Aetna. We affirm the district court ruling.

**AFFIRMED.**