# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3547

_____

| | | |
|---|---|---|
| Timothy Merriam; Justine Merriam, individually and as next best friend of C. Merriam, K. Merriam and C. Merriam, minor children, | * * * * * | |
| Plaintiffs - Appellants, | * * | |
| | * * * | Appeal from the United States District Court for the Southern District of Iowa. |
| v. | * * | |
| National Union Fire Insurance Company of Pittsburgh, Pennsylvania, a corporation, | * * * * | |
| Defendant - Appellee, | * * | |
| Gallagher Transportation Services, a division of Arthur J. Gallagher and Company - Kansas City, a corporation, | * * * * | |
| Defendant - Appellee. | * | |

_____

Submitted: June 9, 2009
Filed: July 17, 2009

_____

Before MURPHY, ARNOLD, and GRUENDER, Circuit Judges.

_____

MURPHY, Circuit Judge.

Timothy Merriam, joined by his wife and children, brought this diversity action against National Union Fire Insurance Company (National Union) and Gallagher Transportation Services (Gallagher) seeking damages for the denial of insurance benefits. Merriam asserted three claims: (1) breach of contract, (2) bad faith denial of insurance benefits, and (3) frustration of reasonable expectations. The district court granted summary judgment to National Union and Gallagher on all three. Merriam now appeals from the summary judgment on the breach of contract and bad faith claims. We affirm in part and reverse in part.

I.

In 2004 Merriam contracted to become a truck driver and independent contractor for Landstar Ranger, an interstate trucking company which contracts with individual truck owners and operators to transport freight. The Independent Contractor Operating Agreement between Merriam and Landstar imposes several general obligations on the independent contractor, including: maintaining the tractor and trailer in good and safe operating condition; operating the tractor and trailer at all times in a safe and prudent manner; securing loads while in transport; and delivering loads with reasonable diligence, speed, and care. The manner in which these contractual responsibilities are to be met is not detailed in the agreement.

The Landstar agreement also requires the independent contractor to provide verification of coverage under a qualified accident or workers' compensation policy. To satisfy this requirement, Merriam obtained a Contractor Protection Plan (CPP) from National Union effective January 1, 2005. The CPP policy, which was written specifically for Landstar, contains coverage for "occupational accident benefits" and "nonoccupational accident benefits." The policy allows recovery for occupational accident benefits at $1,000,000 per accident and nonoccupational accident benefits at $7,500 per accident.

The key policy language for understanding the scope and coverage for an "occupational" accident is its definition as one which:

> occurs or arises out of or in the course of the Insured Person performing services within the course and scope of contractual obligations to the Contractee.

Landstar is designated as the Contractee in the CPP policy; Merriam is the Insured Person.

On March 24, 2005 Merriam picked up a load in Sparks, Nevada for delivery in Cedar Rapids, Iowa. On March 29 Merriam reached Iowa with the load where he says he stopped at his home in Boone for a mandatory federal Department of Transportation break. There are two driveways on Merriam's property in Boone, one for personal use vehicles and one built specifically for parking his tractor and trailer. Merriam asserts that he constructed the special driveway in part because Landstar imposes restrictions on where a loaded tractor and trailer may be parked and in part because a local ordinance bars him from being able to park his rig on the gravel road next to his home.

When Merriam prepared to park his truck on March 29, he noticed that a sinkhole had developed in the driveway specially constructed for his rig, on a spot where an underground waterline had previously been repaired. Merriam states that in order to prevent the rig from becoming stuck in the sinkhole, he pulled the truck off that driveway and onto the adjacent gravel road. He then used his own dump truck to lower gravel into the sinkhole. According to Merriam, the load of gravel on his dump truck was for use on both his property and that surrounding his mother's nearby home. When he discovered he was unable to put the bed of the dump truck back into its neutral position, he attempted to reach under the truck bed to see whether a cable had caught. The truck bed fell on the left side of his head, his left shoulder, and his left arm. Merriam was immediately taken to the hospital and has undergone multiple

-3-

surgeries since the accident. He now has a nonfunctioning left arm, has incurred medical bills estimated at $400,000, and has been declared permanently and totally disabled by the Social Security Administration.

Merriam's wife initially contacted Landstar to inquire about the insurance policy and was informed that there was no insurance coverage available for his accident. Merriam did not contact Gallagher, the claims adjuster for National Union, to report the accident until August 30, 2005. On that date Merriam relayed the details of the accident by phone and reported that it had occurred at 727 Linn Street, his mother's address. His own address was 1915 West 1st Extension. Gallagher then sent Merriam several documents to fill out concerning the accident, and he also listed the location of the accident as 727 Linn Street on both the accident fact sheet and the medical claim form. During later verbal and written communications with Gallagher, Merriam maintained that the accident had taken place at his home and that his earlier statements to the contrary had been affected by his head injury and heavy pain medication, which caused him to be disoriented and confused.

Following Merriam's initial phone call to Gallagher, the claims adjusters assigned to his file set reserves on his claim at $7,500, the limit for nonoccupational accident benefits, noting that Merriam had been in his personal vehicle when injured. At the time the initial reserves were set, the claims adjusters also assumed Merriam was at home when the accident occurred. To process Merriam's claim, Gallagher contacted Landstar to obtain information on the load he was carrying. Landstar first informed Gallagher that it had no information about the accident and that Gallagher had the incorrect freight number for Merriam's load. Gallagher later obtained the correct freight number and confirmed that Merriam's load was picked up by another driver at Merriam's home on March 30, 2005 and delivered the same day. Gallagher also obtained Merriam's medical records, driver log, and an additional statement prepared by Merriam to clarify that the accident took place at his home. On October 21, 2005 Gallagher, acting on behalf of National Union, sent a letter to Merriam

stating that based upon the circumstances of his accident, his claim qualified only for the $7,500 in nonoccupational accident benefits under the CPP policy.

Merriam did not appeal the denial of occupational benefits but instead brought this action in federal court, alleging that National Union and Gallagher frustrated his reasonable expectations as to the policy's coverage, breached the parties' insurance contract, and made a bad faith denial of insurance benefits when they denied him occupational accident benefits. On cross motions for summary judgment, the district court concluded that the undisputed facts established that National Union and Gallagher had a reasonable basis for denying Merriam's policy claim, preventing recovery on the bad faith claim. The court determined that Merriam had failed specifically to resist the motion for summary judgment on the breach of contract claim, as required under Local Rule 56(b), and that this failure was alone grounds to grant the motion.[1] The court further concluded that even had Merriam resisted the motion, the contract claim would not have survived on the merits. The court granted summary judgment to National Union and Gallagher on all three claims. Merriam appeals the district court's grant of summary judgment on the contract and bad faith claims.

## II.

We review de novo the district court's grant of summary judgment, viewing all facts and reasonable inferences in the light most favorable to the nonmoving party. Larson v. Kempker, 414 F.3d 936, 939 (8th Cir. 2005). Summary judgment is appropriate when the evidence presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). We also review de novo the

---

[1]Merriam's brief did, however, contain several pages of argument specifically resisting the motion for summary judgment on the contract claim.

district court's interpretation of the contractual provisions in an insurance policy. Allianz Ins. Co. of Canada v. Sanftleben, 454 F.3d 853, 855 (8th Cir. 2006). This diversity case is governed by Iowa law.

A.

We first consider the district court's grant of summary judgment to National Union and Gallagher on Merriam's claim for breach of contract. The construction of an insurance policy is a question of law for the court. Grinnell Mut. Reins. Co. v. Jungling, 654 N.W.2d 530, 536 (Iowa 2002). The interpretation of a contract—the process of determining the meaning of the words used—is also generally a question of law for the court "unless it depends on extrinsic evidence or a choice among reasonable inferences to be drawn." Nat'l Union Fire Ins. Co. of Pittsburgh v. Terra Indus., Inc., 346 F.3d 1160, 1164 (8th Cir. 2003); A.Y. McDonald Indus. v. Ins. Co. of N. Am., 475 N.W.2d 607, 618 (Iowa 1991). Because they are in the nature of adhesion contracts, Iowa law provides that insurance contracts are to be construed in the light most favorable to the insured. Ferguson v. Allied Mut. Ins. Co., 512 N.W.2d 296, 299 (Iowa 1994).

The parties agree that the key issue on the breach of contract claim is whether Merriam's actions leading up to the accident qualify as occupational. The key issue is thus whether Merriam's actions "arose out of or in the course of" performing services "within the course and scope" of his contractual obligations to Landstar. In the context of coverage clauses, such as the one at issue here, "words like 'arising out of' must be given a broad, comprehensive meaning." Talen v. Employers Mut. Cas. Co., 703 N.W.2d 395, 405 (Iowa 2005) (quoting Tacker v. American Family Mut. Ins. Co., 530 N.W.2d 674, 677 (Iowa 1995)). The Iowa Supreme Court has instructed that "arising out of" must be understood to mean "originating from, growing out of, or flowing from, and require only that there be some causal relationship between injury

and risk for which coverage is provided." Kalell v. Mutual Fire & Auto Ins. Co., 471 N.W.2d 865, 867 (Iowa 1991).

In granting summary judgment to National Union and Gallagher on the contract claim, the district court focused primarily on the lack of specific obligations contained in the independent contractor agreement. The court first determined that at the time of the accident, Merriam was fixing a malfunctioning personal vehicle. The court reasoned that there were no contractual obligations in the agreement under which Landstar could reasonably have foreseen that Merriam's act of fixing a personal vehicle would fall "within the course and scope" of his contractual duties and obligations to haul cargo for Landstar. The court concluded that because Merriam was not performing services "within the course and scope" of his contractual obligations to Landstar at the time of his accident, he was not entitled to occupational accident benefits under the CPP policy.

Relying on several provisions of the independent contractor agreement, Merriam argues that at the time of the accident he was performing services within the scope of his contractual obligations to Landstar, including the obligations to secure his load while en route to the delivery location, to operate his tractor and trailer in a safe and prudent manner, and to deliver his load with diligence, speed, and care. While Merriam may not have been required by the agreement to take the specific actions he did prior to the accident, he contends that his purpose was to comply with his contractual duties. Merriam emphasizes that he intended to park his rig on his specially constructed driveway in order to keep the loaded rig secure and that he immediately took action to fill the sinkhole to prevent the rig from becoming stuck and potentially compromising his timely delivery of the load.

National Union and Gallagher assert that the district court was correct in its conclusion that at the time of his accident, Merriam was not engaged in any activity "within the course and scope" of his contractual duties to Landstar. They argue that

the independent contractor agreement did not impose an obligation on Merriam to take the specific actions leading to the accident. The agreement did not specify that Merriam must take his required DOT break at his home, park his rig on a specially constructed driveway, or fill that driveway with gravel upon discovering a sinkhole. National Union and Gallagher contend that Merriam was merely fixing a personal vehicle at the time of his accident, a task that does not fall "within the course and scope" of the duties owed under the independent contractor agreement.

When the facts and all reasonable inferences are considered in the light most favorable to Merriam, the nonmoving party—as required on review of a district court's grant of summary judgment—his decisions to take his mandatory DOT break at his home, to park his loaded rig on the separate driveway, and to fill the sinkhole in the driveway with gravel can be viewed as having been made with the intention to fulfill specific contractual obligations to Landstar—namely the obligations to secure the loaded rig, to ensure the load was delivered with diligence, speed, and care, and to maintain the truck and trailer in safe operating condition. Then, while emptying the gravel on the driveway for the rig, the bed of Merriam's dump truck became stuck and he was injured trying to fix it. Construing the policy liberally as required under Iowa law, Merriam's actions leading to the accident fall within "the course and scope" of his obligations to Landstar under the independent contractor agreement. Ferguson, 512 N.W.2d at 299.

To qualify as "occupational" under the CPP policy, Merriam's accident must also have arisen from or in the course of those actions. As defined by the Iowa Supreme Court, his accident must have originated from, grown out of, or flowed from the actions he took in furtherance of his contractual obligations. Kalell, 471 N.W.2d at 867. Merriam's accident, as he presents it, was caused by his attempt to park his rig securely on the separate driveway without the risk of the rig becoming stuck which required lowering gravel on to the driveway. We conclude that the accident, if it occurred as Merriam asserts, fell within the scope of the term "occupational" as

-8-

defined by the CPP policy: it "arose out of or in the course of" performing services "within the course and scope" of Merriam's contractual obligations to Landstar.

To be sure, there remains the important question of whether the accident in fact occurred in the manner Merriam describes. There are acknowledged factual disputes as to whether the accident occurred at Merriam's home or at his mother's nearby property, whether the driveway Merriam was purportedly filling was constructed specifically for his rig, why his dump truck was filled with a load of gravel, and whether his actions preceding the accident were taken with the intention of furthering his contractual obligations to Landstar, as opposed to the intention simply to fix up his property. These are not issues for resolution at the summary judgment stage, however. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) (holding that at summary judgment the judge's role is not "to weight the evidence and determine the truth of the matter asserted but to determine whether there is a genuine issue for trial."). It is for the factfinder to determine—after weighing the credibility of the evidence presented at trial—whether the accident occurred as Merriam describes and whether he is entitled to occupational accident benefits. Accordingly, we conclude that summary judgment was premature and that Merriam's claim for breach of contract should be remanded for trial.

B.

Under Iowa law, a claim of bad faith requires the insured to prove: "(1) that the insurer had no reasonable basis for denying benefits under the policy; and (2) the insurer knew, or had reason to know, that its denial was without basis." Rodda v. Vermeer Mfg., 734 N.W.2d 480, 483 (Iowa 2007). Whether the insurer had a reasonable basis for the denial of benefits is an objective inquiry; a reasonable basis for the denial of insurance benefits exists under the first element if the claim is "fairly debatable," i.e., if it is "open to dispute on any logical basis." Bellville v. Farm Bureau Mut. Ins. Co., 702 N.W.2d 468, 473 (Iowa 2005). The fact that the insurer's

position is ultimately found to lack merit is not alone enough to establish the first element of a bad faith claim; the focus is on the existence of a debatable issue. City of Madrid v. Blasnitz, 742 N.W.2d 77, 82 (Iowa 2007).

Merriam argues that Gallagher conducted a wholly inadequate investigation into the circumstances surrounding his injury and as a result National Union could not have had an objectively reasonable basis for the denial of his claim for occupational accident benefits. The district court correctly concluded that an improper investigation cannot alone sustain a tort action for bad faith if the insurer had an objectively reasonable basis for denying the insured's claim. Bellville, 702 N.W.2d at 474. Even if Iowa law were not so, the record demonstrates that Gallagher engaged in more than a cursory investigation into Merriam's claim. Representatives from Gallagher spoke with Merriam personally on several occasions about the details of the accident, asked him to provide a detailed written statement about the accident, obtained Merriam's medical records and driver log, contacted Landstar about both the load Merriam was carrying and the accident itself, and sent an investigator to Merriam's home.

National Union's subsequent denial of the claim was based on several undisputed facts. Merriam was beginning a driving break at the time of the accident, he was repairing a personally owned vehicle when the accident occurred, and he reported more than once that the accident occurred at a different address than his home.

Regardless of whether National Union was ultimately correct in its decision to deny Merriam occupational accident benefits, the claim was fairly debatable and National Union had an objectively reasonable basis for its denial. The district court did not err in granting National Union's motion for summary judgment on the bad faith claim.

## III.

For the reasons stated above, we affirm the district court's grant of summary judgment on Merriam's bad faith claim, but we reverse the judgment on Merriam's claim for breach of contract and remand for trial.

_____