# IN THE SUPREME COURT OF IOWA

No. 12–2088

Filed May 2, 2014

**DENNIS H. HAGENOW** and **ROSALEE A. HAGENOW,**

Appellees,

vs.

**AMERICAN FAMILY MUTUAL INSURANCE COMPANY,**

Appellant.

---

Appeal from the Iowa District Court for Black Hawk County, George L. Stigler, Judge.

An insurer seeks interlocutory review of a district court's denial of the insurer's motion for summary judgment. **REVERSED AND REMANDED.**

Scott K. Green of American Family Mutual Insurance, West Des Moines, for appellant.

James W. Carney and George W. Appleby V of Carney & Appleby, P.L.C., Des Moines, for appellee.

**ZAGER, Justice.**

Dennis and Rosalee Hagenow (Hagenows) brought this action to recover uninsured motorist benefits from their insurer, American Family Mutual Insurance Company (American Family). American Family moved for summary judgment arguing the Hagenows were not entitled to uninsured motorist benefits under their policy. The district court denied American Family's motion for summary judgment, and American Family filed an application for interlocutory appeal, which we granted. For the reasons set forth below, we reverse and remand.

## I. Background Facts and Proceedings.

On November 10, 2008, Dennis Hagenow was stopped at a red light at the intersection of University Avenue and Cedar Heights Drive in Cedar Falls, Iowa, when his vehicle was rear-ended by a vehicle driven by Betty Schmidt. Dennis suffered personal injuries, and his vehicle was totaled. Schmidt was taken to the hospital and cited for failure to stop in an assured clear distance.

In November 2010, the Hagenows filed an action alleging negligence against Schmidt. Schmidt filed an answer denying the Hagenows' allegations and asserting the defense of sudden emergency. Schmidt claimed to have suffered a transient ischemic attack or stroke immediately before the accident with Dennis. The matter proceeded to a jury trial. According to the judgment entered by the district court after the trial, "[t]he jury returned a verdict that the defendant was not negligent under any theories."[1]

At the time of the collision, American Family was the automobile insurer of both the Hagenows and Schmidt. Schmidt's automobile

---

[1]The judgment in favor of Schmidt was ultimately affirmed by us on further review. *See Hagenow v. Schmidt*, 842 N.W.2d 661, 678 (Iowa 2014).

insurance policy had a personal injury liability limit of $300,000 per person and a property damage liability limit of $100,000. The Hagenows' policy included uninsured motorist coverage that provided American Family would "pay compensatory damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle."

The Hagenows filed an uninsured motorist claim under their insurance policy. The Hagenows' policy defined "an uninsured motor vehicle" as a motor vehicle that was:

a. Not insured by a bodily injury liability bond or policy at the time of the accident.

b. Insured at the time of the accident by a liability bond or policy with bodily injury liability limits below the minimum required by the financial responsibility law of the state in which your insured car is principally garaged.

c. A hit-and-run vehicle whose operator or owner is unknown and which causes bodily injury to you or a relative. Physical contact with a hit-and-run vehicle is required.

d. Insured by a bodily injury liability bond or policy at the time of the accident but the company denies coverage or is or becomes insolvent within one year after the accident.

American Family determined Schmidt's vehicle was not an uninsured motor vehicle under the Hagenows' policy, so American Family denied the claim.

In November 2010, the Hagenows filed this breach of contract action against American Family. The Hagenows alleged American Family breached the automobile insurance policy between the two by not paying uninsured motorist benefits. American Family answered, denying the

Hagenows' allegations and raising affirmative defenses, including that Schmidt was not an "uninsured motorist" under the terms of their policy.

In June 2012, American Family filed a motion for summary judgment. First, American Family contended that Schmidt was not an uninsured motorist under the definitions of the policy. Additionally, American Family argued that to recover damages under the uninsured motorist provision, the Hagenows must prove that they were "legally entitled to recover from the owner or operator of an uninsured motor vehicle." American Family acknowledged Schmidt was covered and defended Schmidt at the underlying civil jury trial which determined that Schmidt was not liable for the Hagenows' damages. Therefore, American Family maintained, the Hagenows were not legally entitled to recover.

The Hagenows filed a resistance and cross-motion for summary judgment. First, they argued they were legally entitled to recover because the jury found Schmidt not liable on the basis of a legal excuse. Next, while the Hagenows conceded Schmidt had automobile insurance coverage at the time of the collision, they nevertheless insisted Schmidt's vehicle was uninsured under the terms of the Hagenows' insurance policy because American Family denied that the Hagenows' uninsured motorist coverage applied to sudden emergency defenses, like the one raised by Schmidt.

In October, the district court conducted a hearing on American Family's motion for summary judgment. After the hearing, the district court issued its ruling denying American Family's motion for summary judgment. The district court found that the "legally entitled to recover" language in the policy was to be broadly construed. The district court also found that "[t]he sole methodology of recovery for the Hagenows is litigation to recover for their injuries." The district court concluded that

under the facts of this case, the uninsured motorist provision found in the Hagenows' insurance policy did not bar their action against American Family.

American Family timely filed an application for interlocutory appeal, which we granted.

## II.  Standard of Review.

We review a district court's decision to deny a motion for summary judgment for correction of errors at law.  *Ranes v. Adams Labs., Inc.*, 778 N.W.2d 677, 685 (Iowa 2010).  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Iowa R. Civ. P. 1.981(3).  We view the record in the light most favorable to the nonmoving party.  *Pitts v. Farm Bureau Life Ins. Co.*, 818 N.W.2d 91, 96 (Iowa 2012).

## III.  Discussion.

There are two issues on appeal.  The first is whether the district court erred by concluding the Hagenows were "legally entitled to recover" from American Family under the Hagenows' uninsured motorist (UM) provision.  The second issue is whether Schmidt's vehicle was "an uninsured motor vehicle" under the Hagenows' UM provisions.

Before separately addressing each issue, we recognize that our fundamental task is to interpret the language of the insurance policy. *Am. Family Mut. Ins. Co. v. Petersen*, 679 N.W.2d 571, 576 (Iowa 2004) (explaining an automobile insurance policy is a contract and is governed by rules applicable to contracts).  "In doing so, 'we strive to ascertain the intent of the parties at the time the policy was sold.'"  *Id.* (quoting *Ferguson v. Allied Mut. Ins. Co.*, 512 N.W.2d 296, 299 (Iowa 1994)).  We

ordinarily determine the parties' intent from the policy's language, unless the policy is ambiguous. *Id.* We have said "[a]n ambiguity exists when, after application of our relevant rules of interpretation, a genuine uncertainty results as to which of two or more meanings is proper." *Id.* We construe the policy provision in favor of the insured when the provision is ambiguous. *Id.* With these principles in mind, we address each issue.

**A. Legally Entitled to Recover.** On the first issue, American Family argues a jury found Schmidt was not liable for the collision with Dennis. Because the jury found Schmidt was not liable, American Family insists the Hagenows are not legally entitled to recover. The Hagenows respond that Schmidt was negligent but was absolved of liability by her sudden emergency defense, a type of legal excuse. The Hagenows argue Schmidt's legal excuse does not affect their legal entitlement to recover under the UM coverage.

We have said that UM coverage applies when four conditions are met:

> (1) the injured person is an insured under the insurance policy provisions; (2) the injured person is "legally entitled to recover damages from the owner or operator of an uninsured motor vehicle;" (3) the injury to the insured was "caused by accident;" and (4) the injury arose "out of the ownership, maintenance, or use" of an uninsured motor vehicle.

*Id.* at 575 n.1 (quoting Iowa Code § 516A.1 (2001)). The terms of the Hagenows' UM policy with American Family are consistent with these conditions. The insured carries the burden under the "legally entitled to recover" requirement to prove the uninsured motorist was liable and the extent of the insured's damages. *Id.* at 584 n.3. Therefore, the insured may satisfy the "legally entitled to recover" condition by either obtaining a valid judgment against the uninsured motorist, or by bringing an

action against the insurer. *See id.*; *see also Leuchtenmacher v. Farm Bureau Mut. Ins. Co.*, 461 N.W.2d 291, 294 (Iowa 1990) (concluding in an underinsured-motorist-coverage (UIM) case that there was "nothing in the language of [our UM and UIM statute]" suggesting that legal entitlement to recovery "must be determined by a separate lawsuit"). We have explained the insured need only "prove the damages he or she would have been entitled to recover had a lawsuit against the underinsured motorist been taken to judgment." *Waits v. United Fire & Cas. Co.*, 572 N.W.2d 565, 574 (Iowa 1997). The same is true when the motorist is an uninsured motorist.

The phrase "legally entitled to recover" contained in the Hagenows' UM provision is taken from Iowa Code section 516A.1, which requires that UM coverage must provide "for the protection of persons insured under such policy who are *legally entitled to recover* damages from the owner or operator of an uninsured motor vehicle." Iowa Code § 516A.1 (2013) (emphasis added). We interpret the UM provision to be consistent with the legislature's intent in enacting the UM statute. *See Otterberg v. Farm Bureau Mut. Ins. Co.*, 696 N.W.2d 24, 31 (Iowa 2005) (concluding claimant was not legally entitled to recover under either his UM coverage or Iowa Code section 516A.1); *Waits*, 572 N.W.2d at 573 (explaining the phrase "legally entitled to recover" in UIM coverage is interpreted to be consistent with intent behind UIM statute); *see also Wetherbee v. Econ. Fire & Cas. Co.*, 508 N.W.2d 657, 659 (Iowa 1993) ("[A]n insurer cannot offer underinsured motorist coverage more restrictive than that required by the statute."). In doing so, we interpret the phrase liberally, not literally. *Waits*, 572 N.W.2d at 573.

We have never addressed the precise issue presented here. We have, however, addressed other situations in which the insured sought to

recover UM or UIM benefits despite being "unable to recover from the negligent tortfeasor." *See Otterberg*, 696 N.W.2d at 29 (noting liberal interpretation of "legally entitled to recover" has in several cases enabled an insured to recover under UM coverage despite inability to recover from the tortfeasor). In *Leuchtenmacher,* we held a judgment against the underinsured tortfeasor was unnecessary to seek UIM benefits from an insurer. 461 N.W.2d at 294.

In *Waits*, an insured motorist settled with an underinsured motorist, then sought UIM benefits. 572 N.W.2d at 568. The insurer resisted, arguing Waits was not legally entitled to recover because she had given the underinsured motorist a release instead of giving a covenant not to sue. *Id.* at 572. We rejected the insurer's argument, reasoning that Waits could still show the damages to which she would have been entitled had a tort suit been pursued. *Id.* at 574.

In another case, we wrestled with the issue "whether an insured is entitled to recover underinsured motorist benefits from her insurance company when the insured has no right to bring an action in her own name against the underinsured motorist." *Wetherbee*, 508 N.W.2d at 658. After her husband James was killed in a car accident, Katherine Wetherbee sought to recover loss-of-consortium damages under the couples' UIM coverage. *Id.* The insurer insisted that she was not legally entitled to recover because only the administrator of James's "estate could bring an action for post-death loss of consortium." *Id.* According to the insurer, because Katherine was not the estate's administrator—in fact, no estate had been opened—she could not recover the damages. *Id.* at 658–59.

In rejecting the insurer's interpretation of the phrase, we opted for an interpretation consistent with the legislature's purpose in requiring

UIM coverage and its intent in using "legally entitled to recover." *See id.* at 661 (finding insurer's interpretation inconsistent with the legislature's purpose and intent). The purpose of the UIM statute was, we explained, to compensate "the victim of an underinsured motorist to the same extent as if the underinsured motorist were adequately insured." *Id.* at 660. We concluded the "only reasonable interpretation" of the phrase was "that it means the insured must have suffered damages caused by the fault of the underinsured motorist and be entitled to receive those damages." *Id.* at 661.

In *Otterberg*, we held an insured was not legally entitled to recover UM benefits because the injuries sustained were covered under the workers' compensation system. *See* 696 N.W.2d at 31. We distinguished *Wait* and *Wetherbee*, explaining that in those cases the "law provided for an underlying claim, but the claim could not be enforced by the insured under the particular circumstances." *Id.* at 30. By contrast, Otterberg never had a legal right to recovery against a coemployee. *See id.* Even noting the liberal interpretation given to the phrase "legally entitled to recover," we said it could not "be stretched so far as to cover situations when an insured could have never recovered from the uninsured motorist because the law did not provide for any recovery." *Id.*

In this case, the law provided a mechanism for the Hagenows to pursue their underlying negligence claim. They filed a civil tort claim against Schmidt, and after a period of discovery, proceeded to present their claim through a jury trial. Unfortunately for the Hagenows, the jury, applying principles of negligence and fault, found Schmidt was not negligent. As American Family points out, despite the liberality with which this court has interpreted the phrase "legally entitled to recover," the liability requirement has never been abandoned. Indeed, despite

rejecting the insurer's attempts to avoid paying benefits in *Leuchtenmacher*, *Wetherbee*, and *Waits*, it was recognized that the insured's entitlement to recovery depended on establishing the underinsured motorist's liability. *See, e.g., Waits*, 572 N.W.2d at 574 (noting Iowa Code section 516A.1 "requires the insured to prove the damages he or she would have been entitled to recover" in a lawsuit); *Wetherbee*, 508 N.W.2d at 661 (concluding "the insured must have suffered damages caused by the fault of the underinsured motorist"); *Leuchtenmacher*, 461 N.W.2d at 293 (noting the statute is written to protect consumers and applies to a situation in which the insured is entitled to recover but "the liability of the person legally responsible is not insured" (citation and internal quotation marks omitted)).

Undaunted, the Hagenows point to a respected scholar on UM insurance who they contend argues that tort immunities and other limitations available to a tortfeasor should not prevent an insured from recovering UM coverage from an insurer. Alan I. Widiss, *Uninsured Motorist Coverage: Observations on Litigating over When a Claimant Is "Legally Entitled to Recover,"* 68 Iowa L. Rev. 397, 426 (1983) [hereinafter Widiss] (arguing a tort immunity or other limitation should not preclude claims under UM coverage on the ground the insured "would not be legally entitled to recover from the tortfeasor"); *see also* 1 Alan I. Widiss & Jeffrey E. Thomas, *Uninsured and Underinsured Motorist Insurance* § 7.14, at 432 (3d rev. ed. 2005) [hereinafter *Uninsured and Underinsured Motorist Insurance*] (making the same argument). According to the Hagenows, Professor Widiss's commentary supports their legal entitlement to recovery of UM benefits in spite of Schmidt's successful sudden emergency defense.

Professor Widiss challenges insurers' use of an uninsured motorist's tort-immunity defense in proceedings to recover UM benefits. *See* Widiss, 68 Iowa L. Rev. at 426. He contends that the tort immunity absolved only the tortfeasor from liability; the UM coverage is not related to the tortfeasor, so the tort immunity should not affect whether the insurer pays the UM benefit. *Id.* Professor Widiss argues further the question whether a tort immunity can protect an insurer should be resolved by balancing the public policy in favor of protecting victims of uninsured drivers against the public policy interests behind tort immunities. *See id.* at 426–27. Also, he points to the gradual abolition of some tort immunities, which he argues indicates an increasing concern for compensating tort victims. *Id.* at 427. Professor Widiss concludes, "Determining the rights of an insured under the uninsured motorist coverage in terms of *whether the tortfeasor was negligent,* without regard to a tort immunity, is consistent with this trend." *Id.* at 427 (emphasis added).

The Hagenows' reading of Professor Widiss's commentary is flawed for at least two reasons. First, the sudden emergency defense is not a type of immunity, but rather a distinct defense that, if proved, excuses the alleged tortfeasor from liability. *Compare Vasconez v. Mills*, 651 N.W.2d 48, 54 (Iowa 2002) (explaining the fact finder may excuse an alleged tortfeasor's violation of statutory law if the alleged tortfeasor proves he or she was confronted with an unforeseen emergency), *with* W. Page Keeton, et al., *Prosser and Keeton on The Law of Torts* § 131, at 1032 (5th ed. 1984) ("An immunity is a freedom from suit or liability."). Unlike immunity defenses, which for policy reasons prevent a protected party from being held liable, the sudden emergency defense recognizes the difficulty a person has considering reasonable alternatives when

confronted by an unforeseen emergency and therefore modifies the standard of care. *Compare Hook v. Trevino*, 839 N.W.2d 434, 445 (Iowa 2013) (declining to extend state volunteer's immunity to the state after considering policy consequences, among other considerations); *Turner v. Turner*, 304 N.W.2d 786, 787–89 (Iowa 1981) (abrogating absolute parental immunity for negligence after considering "the values which that doctrine purports to foster"), *with Vasconez*, 651 N.W.2d at 54 (explaining the rationale of the sudden emergency defense); *Jones v. Blair*, 387 N.W.2d 349, 352 (Iowa 1986) (noting a person acting in an emergency "is not held to the same standard of care as one who has had time to reflect"). Thus, the Hagenows' argument misses the mark as a definitional matter.

Furthermore, though Professor Widiss is critical of immunity defenses, he accepts that the uninsured motorist must be negligent for the insurer to pay UM benefits. A broader review of his work confirms his focused critique is not directed at defenses that challenge the merits of the insured's negligence case. For instance, in a well-known treatise, Professor Widiss declares that "[t]he language 'legally entitled to recover' is undoubtedly intended to mean that a claimant is only entitled to indemnification for injuries resulting from the tortious conduct of an [uninsured] motorist." 3 *Uninsured and Underinsured Motorist Insurance* § 34.1, at 168 (footnotes omitted). The treatise also counsels that the right to recover UM benefits is "contingent on the insured being legally entitled to recovery because the injuries were caused by the *negligent* operation of" a vehicle. 1 *Uninsured and Underinsured Motorist Insurance* § 7.2, at 363 (emphasis added).

Notably, insurers' use of other types of defenses to liability goes unchallenged by Professor Widiss and other leading commentators.

Although Widiss's treatise questions the overall fairness of the contributory negligence defense, in light of the widespread adoption of comparative fault, it does not quibble with the defense's use by insurers in states where the defense is available. *See id.* § 7.4, at 378–81. In addition, Widiss does not challenge insurers' use of an available workers' compensation system, so long as the insured is compensated by workers' compensation. *See* 3 *Uninsured and Underinsured Motorist Insurance* § 34.2, at 178–79.

Noting that comparative fault has replaced contributory negligence, another well-known treatise approves of insurers using comparative fault as a defense to paying UM benefits because "the purpose of uninsured . . . motorist insurance is to put the claimant in the same position the claimant would have been had the tortfeasor been adequately insured." 6 Jeffrey E. Thomas & Christopher J. Robinette, *New Appleman on Insurance Law Library Edition* § 65.03[2], at 65-65 (2013) [hereinafter *New Appleman*]; *see Rodman v. State Farm Mut. Auto. Ins. Co.*, 208 N.W.2d 903, 909 (Iowa 1973) (explaining the purpose of the UM statute is to provide the insured the same protection he or she would have had if the tortfeasor had been minimally insured). Hence, "because the tortfeasor would be entitled to raise the defense and obtain a reduction in damages, it is appropriate for the insurer to receive the same benefit." *New Appleman* § 65.03[2], at 65-65. Thus, although Professor Widiss pointedly challenges insurers' use of immunity defenses, he and other leading commentators do not question insurers' use of other defenses to negligence in deciding whether an insured is legally entitled to recover. On the contrary, it is accepted that "[a]n insurer may assert as defenses to a claim under [uninsured] coverage the nonnegligence of the

uninsured." 9 Steven Plitt, et al., *Couch on Insurance 3d* § 123:16, at 123-58 (rev. ed. 2008).

High courts in other states hold defenses aimed at negating an element of the negligence claim are part of the determination whether an insured is legally entitled to recover. *See, e.g., Ex parte Mason*, 982 So. 2d 520, 521 (Ala. 2007) (rejecting insurer's use of statute of limitations defense but stating "the uninsured motorist's substantive defenses are available to the insurer"); *Williams v. State Farm Mut. Auto. Ins. Co.,* 641 A.2d 783, 787 (Conn. 1994) ("Whether the uninsured motorist was legally liable must be determined in light of any substantive defenses that would have been available to the uninsured motorist."); *Stemple v. Md. Cas. Co.,* 144 P.3d 1273, 1275–76 (Kan. 2006) (explaining insurer can use "the substantive defenses that would have been available to the uninsured motorist" (citation and internal quotation marks omitted)); *Brown v. Lumbermens Mut. Cas. Co.*, 204 S.E.2d 829, 834 (N.C. 1974) ("Any defense available to the uninsured tort-feasor should be available to the insurer."); *Snyder v. Am. Family Ins. Co.*, 871 N.E.2d 574, 581 (Ohio 2007) (observing that insurers should have the same defenses available to them as the allegedly negligent uninsured motorist); *Vega v. Farmers Ins. Co. of Or.,* 918 P.2d 95, 102–04 (Or. 1996) (explaining possible reasonable interpretations of the phrase "legally entitled to recover" and holding it requires the insured to prove elements of negligence and overcome defenses). Even a case cited by Professor Widiss for its criticism of immunity defenses and relied on by the Hagenows interprets the phrase "legally entitled to recover" to mean "that the claimant must be able to prove the elements of her claim necessary to entitle her to recover damages." *Allstate Ins. Co. v. Elkins*, 396 N.E.2d 528, 531 (Ill. 1979); Widiss, 68 Iowa L. Rev. at 425; *see also Karlson v.*

*City of Okla. City,* 711 P.2d 72, 74–75 (Okla. 1985) (rejecting use of governmental immunity defense by insurer while noting requirement that insured establish uninsured motorist's fault); *accord* 3 *Uninsured and Underinsured Motorist Insurance* § 34.2, at 175. Many courts and leading commentators agree the determination whether an insured is legally entitled to recover includes considering the defenses available to the uninsured motorist. It follows that if an uninsured motorist is not negligent, because a defense negated an element of the negligence claim or otherwise, then the insured motorist is not legally entitled to recover UM benefits from the insurer.

At the underlying civil trial, Schmidt asserted the defense of sudden emergency, contending that although she pled guilty to violating a traffic ordinance in connection with the collision with Dennis, she was not liable because she suffered a stroke prior to the collision. The Iowa State Bar Association Civil Jury Instruction 600.75, captioned "Sudden Emergency," which is to be used "in conjunction with an instruction on legal excuse where a statutory violation is claimed," provides:

> A sudden emergency is an unforeseen combination of circumstances that calls for immediate action or a sudden or unexpected occasion for action. A driver of a vehicle who, through no fault of [his] [her] own, is placed in a sudden emergency, *is not chargeable with negligence if the driver exercises that degree of care which a reasonably careful person would have exercised under the same or similar circumstances.*

Iowa State Bar Ass'n, *Iowa Civil Jury Instruction* 600.75 & cmt. (2012) (emphasis added). The Iowa bar association instruction on legal excuse provides:

> (Name) claims that if you find that [he] [she] violated the law in the operation of [his] [her] vehicle, [he] [she] had a legal excuse for doing so because (excuse) and, therefore, is not negligent. "Legal excuse" means that someone seeks to avoid

the consequences of [his] [her] conduct *by justifying acts which would otherwise be considered negligent.* The burden is upon (name) to establish as a legal excuse:

1. Anything that would make complying with the law impossible.

2. Anything over which the driver has no control which places [his] [her] vehicle in a position contrary to the law.

3. Failure to obey the law when the driver is confronted with sudden emergency not of [his] [her] own making.

4. An excuse or exception provided by the law.

If you find that (name) has violated the law as submitted to you in other instructions, and that [he] [she] has established a legal excuse for doing so under any one of the four definitions set forth above, then *you should find that (name) was not negligent* for violating the particular law involved.

*Id.* 600.74 (emphasis added).[2]

The sudden emergency instruction "is merely an expression of the reasonably prudent person standard of care." *Weiss v. Bal*, 501 N.W.2d 478, 481 (Iowa 1993). Therefore, a driver confronted with an emergency must still exercise reasonable care. *Bannon v. Pfiffner*, 333 N.W.2d 464, 470 (Iowa 1983). The decision whether a person has exercised reasonable care during an emergency is typically for the jury. *See id.* Having been given instructions similar to the uniform instructions, the jury in the negligence case between the Hagenows and Schmidt concluded Schmidt exercised reasonable care under the circumstances. After the trial, in response to the question on the verdict form, " 'Was the

---

[2]We noted in *Hagenow v. Schmidt* that "[t]he Restatement (Third) of Torts: Liability for Physical and Emotional Harm includes a separate section for disability— which does not require advanced awareness or a rapid response." 842 N.W.2d at 676. We observed that section 11(b) on sudden incapacitation best fit the facts of the underlying negligence action. *See id.*; *see also* Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 11(b), at 130 (2010). Schmidt, however, did not request a jury instruction based on that provision. *See Hagenow*, 842 N.W.2d at 677.

defendant, Betty Schmidt, at fault?,' " the jury answered " 'no.' " *Hagenow v. Schmidt*, 842 N.W.2d 661, 669 (Iowa 2014).

Proof of the uninsured motorist's liability is an element that must be established by the insured to recover UM benefits. *See Petersen*, 679 N.W.2d at 584 n.3 (explaining an insured establishes he or she is legally entitled to recover by proving the uninsured motorist's liability and damages). Permitting the Hagenows to recover UM benefits when they were unable to show Schmidt's fault would be inconsistent with the purpose of UM insurance. *See Rodman*, 208 N.W.2d at 909 ("It is plain the legislature intended to assure protection to an insured against motorists whose liability to the insured is not covered."). Because the jury found Schmidt was not at fault for the collision with Dennis, we hold the Hagenows are not legally entitled to recover UM benefits from American Family.

**B. Uninsured Motor Vehicle.** Even if we were to conclude the Hagenows were legally entitled to recover, the Hagenows would still have the burden of showing that Schmidt was an "uninsured motorist" as defined under their insurance policy. *See Wetherbee*, 508 N.W.2d at 660 (observing that in addition to being legally entitled to recover, the insured must satisfy the insurance policy's other terms and conditions). The Hagenows concede there is only one provision in their UM policy under which Schmidt's vehicle could have been defined as uninsured. Under that provision, an uninsured motor vehicle is one that is "[i]nsured by a bodily injury liability bond or policy at the time of the accident but the company denies coverage." The Hagenows argue Schmidt's vehicle, which was undisputedly covered by liability insurance at the time of the accident, was uninsured under this provision.

We acknowledge American Family's capacity as both Schmidt's liability insurer and the Hagenows' UM carrier adds a unique wrinkle to the interpretative exercise. However, for our analysis, we must separate the two different legal capacities involving American Family and the respective insurance policies. American Family, in its capacity as Schmidt's liability insurer, is best thought of as a distinct liability insurer. The Hagenows argue that by refusing to pay UM benefits under their policy, American Family has made Schmidt's vehicle into an uninsured motor vehicle for purposes of the UM policy.

We believe the Hagenows' policy is susceptible of only one reasonable interpretation. In the Hagenows' policy, the terms "[w]e, us, and our" refer to American Family in its capacity as the Hagenows' UM insurer. Under the liability coverage section of the Hagenows' insurance policy, for example, the policy states, "*We* will pay compensatory damages . . . ." It also explains, "*We* will defend any suit . . . ." Also, their UM policy provides, "*We* will pay compensatory damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle."

In the definition of an "uninsured motor vehicle" in the Hagenows' policy, however, the denial of coverage is made by "the company." We have said "[a] cardinal rule of contract interpretation is that the use of substantially different language in provisions of a contract must have been intentional and must be recognized by a reviewing court." *Greenfield v. Cincinnati Ins. Co.*, 737 N.W.2d 112, 120 (Iowa 2007). Thus, the Hagenows' UM policy draws a clear distinction between its capacity as their UM insurer—by using "[w]e, us, [or] our"—and other liability insurers, or in this case, American Family in its capacity as Schmidt's liability insurer—by using "the company."

And this makes sense. The determination whether an allegedly negligent motorist is covered by insurance turns on the terms and conditions of that allegedly negligent motorist's liability insurance policy, which in many cases will be provided by another insurance company. American Family, acting as the Hagenows' insurer, plays no role in deciding whether another motorist is insured under the terms of that motorist's policy. In other words, acting as the Hagenows' UM insurer, American Family's denial that the UM benefits must be paid to the Hagenows under the UM policy has no effect on whether Schmidt's vehicle was uninsured for purposes of the UM policy. The determination whether the allegedly uninsured motorist is covered by insurance is made by that person's insurance company, "[t]he company."

To be more concrete, "the company" in the Hagenows' UM policy refers in this case to American Family in its capacity as Schmidt's liability insurer. In acting as Schmidt's liability insurer, American Family obviously had to decide whether to cover Schmidt's liability according to the terms and conditions of Schmidt's liability policy. Had American Family, in its capacity as Schmidt's liability insurer, denied her coverage, then Schmidt's vehicle would have been, for purposes of the Hagenows' policy, uninsured.

But American Family did not deny Schmidt was covered by insurance; it denied she was liable for the accident with Dennis and raised an affirmative defense. Interpreting nearly identical policy language in *Petersen*, we explained UM coverage applied when the vehicle was "insured but the insurer denies coverage." 679 N.W.2d at 580. It was clear, we said, these "provisions contemplate coverage to include situations . . . when the victim could not recover under the tortfeasor's liability policy due to an exclusion." *Id.* Presumably finding no exclusion

with which to deny her coverage, American Family denied Schmidt's liability and defended her in the negligence case with the Hagenows, as it was contractually obligated to do.

Neither American Family's defense of Schmidt in one capacity, nor American Family's denial she was an uninsured motorist in another capacity, transformed Schmidt into an uninsured motorist. Because American Family, acting as Schmidt's insurer, covered Schmidt, she was not an uninsured motorist for purposes of the Hagenows' UM coverage. Therefore, even if the Hagenows had been legally entitled to recover, they could not satisfy the terms of their UM policy entitling them to benefits. The Hagenows have not met their burden that they are legally entitled to recover damages from the owner or operator of an uninsured motor vehicle.

**IV. Conclusion.**

We conclude the district court erred by denying American Family's motion for summary judgment. The Hagenows were not "legally entitled to recover" under Iowa Code section 516A.1 or their UM policy. In addition, Schmidt's vehicle was not an uninsured motor vehicle under the terms of the Hagenows' UM provision. Accordingly, the district court is reversed, and the matter is remanded to the district court for entry of judgment in favor of American Family.

**REVERSED AND REMANDED.**